CASE 94—PETITION ORDINARY—MARCH 6.

# L. & N. R. R. Co. v. Moore.

APPEAL FROM HARDIN CIRCUIT COURT.

1. MASTER AND SERVANT—RESPONDEAT SUPERIOR.—The master is liable for an injury to one servant by the neglect of another, although they may be engaged in the same common employment, provided the negligent one is superior to or in control of the injured one.

A railroad company is liable for an injury to a brakeman caused by the willful or gross neglect of the conductor or engineer in charge of the train.

2. RAILROADS — FIREMAN ACTING AS ENGINEER.— Where it is the custom of a railroad company to permit the fireman upon its trains to act as engineer in coupling and switching the trains, he is, when so acting, to all intents and purposes, the engineer of the train, and not the common equal fellow-servant of the brakeman, and the rule of *respondeat superior* applies where a brakeman is injured by his negligence.

3. IT WAS GROSS NEGLIGENCE IN THE CONDUCTOR OF A TRAIN to permit an inexperienced fireman to be in charge of the engine while a coupling was being made by a brakeman in obedience to his order. The brakeman had no right, before proceeding to obey the order, to demand information as to who was to engineer the train, but he had the right to expect that it would be done by the proper person, or one reasonably competent to do so.

4. EXCESSIVE VERDICT.—A verdict for nine thousand dollars was not excessive for the loss of a leg in this case.

WM. LINDSAY FOR APPELLANT.

1. Where a servant who has voluntarily taken a dangerous employment receives an injury in the course of his employment, the burden is upon him to prove that the employer was negligent, and that he was free from contributory neglect. (Pierce on Railways, page 382; Sherman & Redfield on Negligence, section 99; Ill. Cent. R. R. Co. v. Heuck's Adm'r, 72 Ill., 286; Central R. & B. Co. v. Kelly, 58 Ga., 114; Sullivan v. Bridge Co., 9 Bush. 88.) Applying this rule, the defendant was entitled to the peremptory instruction asked; but if not, was entitled to judgment upon the findings.

2. The motion for a new trial should have been sustained, because the interrogatories were misleading in form, and not confined to the.

prominent facts upon which the law of the case was to be determined.  (Adams' Adm'r v. L. & N. R. R. Co., 6 Ky. Law Rep., 686.)

3. The plaintiff can not recover on account of the negligence of the fireman or brakeman, the three being in the same line of service. While the common law doctrine of *respondeat superior* has been modified to some extent in this State, it still applies where the evidence fails to show willfulness, or that the injury resulted from negligence of a character so extraordinary that it could not reasonably have been anticipated or guarded against.  (L. C. & L. R. R. Co. v. Cavens' Adm'r, 9 Bush, 565;  L. & N. R. R. Co. v. Collins, 2 Duv., 117;  Doyle v. Iron & Steel Works, MS. Op., May 24, 1883;  L. & N. R. R. Co. v. Robinson, 2 Duv., 118;  L. & N. R. R. Co. v. Brooks' Adm'r, 6 Ky. Law Rep.)

4. The finding as to negligence on the part of the conductor and engineer should have been set aside as against the evidence.

5. It was error to render judgment for the amount awarded as "exemplary damages," as the court failed to explain to the jury the meaning of that term.

WM. WILSON ON SAME SIDE.

1. Appellee was not entitled to recover on account of the negligence of the fireman, both being in the same line of service, and not superior or subordinate the one to the other.  (L. & N. R. R. Co. v. Robinson, 4 Bush, 507;  L. & N. R. R. Co. v. Collins, 2 Duv., 116.)

2. The general special findings of willful and gross neglect must be controlled by the findings of particular facts, showing that there was no negligence.  (Atchison, Topeka & S. F. R. R. Co. v. Plunkett's Adm'r, 25 Kansas;  S. C. Am. & Eng. R. R. Cases, vol. 2, page 127.)

3. The appellee's evidence showed that he was guilty of contributory neglect, and, therefore, appellant was entitled to the peremptory instruction asked.

4. The court erred in its definition to the jury of gross neglect.  (L. & N. R. R. Co. v. McCoy, 5 Ky. Law Rep.;  L. & N. R. R. Co. v. Collins, 2 Duv., 116;  L. & N. R. R. Co. v. Robinson, 4 Bush, 507.)

5. The court should have defined contributory neglect.  (Sullivan v. Bridge Co., 9 Bush, 90.)

W. P. THORNE AND J. BARBOUR FOR APPELLEE.

1. To enable the defendant to rely upon the contributory negligence of the plaintiff as a defense, it must show that its employees could not by proper care have avoided the consequences of plaintiff's negligence.  (Ky. Central R. R. Co. v. Thomas, 79 Ky., 160;  85 N. C., 512.)

L. & N. R. R. Co. v. Moore.

2. Negligence defined. (Cooley on Torts, 630.)

3. Willful neglect was properly defined by the court in its instructions to the jury. (L. & N. R. R. Co. v. McCoy, 81 Ky., 403.)

4. The acts of the conductor, engineer and fireman amounted to willful neglect. (L. C. & L. R. R. Co. v. Cavens, 9 Bush, 559; L. & N. R. R. Co. v. McCoy, 81 Ky., 403.)

5. The conductor, engineer and fireman were each superior to the brakeman, and the latter is, therefore, entitled to recover for an injury resulting from the *gross* or *willful* neglect of any one of them. (L. C. & L. R. R. Co. v. Cavens, 9 Bush, 565; L. & N. R. R. Co. v. Collins, 2 Duv., 114; L. & N. R. R. Co. v. Robinson, 4 Bush, 509; L. & N. R. R. Co. v. Filbern, 6 Bush, 576.)

6. When willful neglect upon the part of the defendant is established, the contributory neglect of the plaintiff can not be relied on as a defense. (Claxton v. E. L. & B. S. R. R. Co., 13 Bush, 636.)

7. The damages awarded are not excessive, as appears from comparison with other verdicts. (Rockwell v. Third Avenue R. R. Co., 63 Barb.; Walker v. Erie Railway Co., 63 Barb., 260; Caldwell v. N. J. Steamboat Co., 56 Barb., 426; Collins v. S. & A. R. R. Co., 23 Ward., 425; Shaw v. Boston, &c., R. R. Co., 5 Gray, 45; Choppin v. N. O. & C. R. R. Co., 17 La.; L. & N. R. R. Co. v. Brooks' Adm'r, 5 Ky. Law Rep.; M. & L. R. R. Co. v. Herrick, 13 Bush.; L. & N. R. R. Co. v. Fox, 11 Bush, 510; Foush v. Rigle, 11 Gratt., 703; Pa. R. R. Co. v. Allen, 53 Pa., 276; P. & O. Canal v. Graham, 63 Pa.)

MONTGOMERY & POSTEN ON SAME SIDE.

1. One of several employees in the same line of service may recover from the common employer for an injury resulting from the *gross* negligence of one of his co-employes. (L. & N. R. R. Co. v. Collins, 2 Duv., 114; L. C. & L. R. R. Co. v. Cavens, 9 Bush, 560; L. & N. R. R. Co. v. Robinson, 4 Bush, 509; Filbern v. L. & N. R. R. Co., 6 Bush, 576; Chicago, Mid. & St. P. R. R. Co. v. Ross, Cent. Law Journal, volume 20, page 27.)

2. The jury have found that there was no contributory negligence; but it is immaterial whether there was or not, as the jury has found that defendant might, by the exercise of ordinary care, have prevented the injury, notwithstanding the negligence, if any, of plaintiff.

3. The interrogatories propounded, as well as the general instructions given, were proper. (L. & N. R. R. Co. v. McCoy, 5 Ky. Law Rep, 407.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellee, J. M. Moore, while in the employ of the appellant, the Louisville and Nashville Railroad

Company, and when engaged upon a local freight train, was, while attempting to make a coupling, caught between the cars, and one of his feet and legs so injured as to necessitate its amputation.

The train consisted of the locomotive and tender, and either twenty-two or twenty-three freight cars. The crew, of a conductor, engineer, fireman, and three brakemen; and of the latter the appellee was the head one. The train had been side-tracked, and then cut in two at the crossing of a road, to enable travelers to pass. The "live portion" of it consisted of the locomotive and three cars; the "dead portion" of probably nineteen cars, and the space between the two portions was about fifty or sixty feet. A short distance down the side-track, beyond where the train had been thus halted, was a barrel of flour to be taken on board; and to save backing down after it the other two brakemen went after it. The testimony tends to show that they had only brought it a part of the way, and that one of them had returned, and gotten upon a car of the dead portion of the train when the accident occurred. After the train had been thus side-tracked for an hour, the conductor started toward the telegraph office, which was near by, and where the engineer already was; and as he did so, he ordered the appellee, Moore, to couple the train. The latter, in obedience to this order, went to the end of the dead portion of the train nearest to the live portion, and the latter backed against the former with great and unusual force, the fireman alone being upon the engine and operating it. The evidence shows that he

L. & N. R. R. Co. v. Moore.

was but a boy—at least only twenty years old, and inexperienced. So far as the record discloses, he had never before worked an engine. When the live part of the train struck the dead portion of it, it ran back about one hundred yards, either from the force of the two coming together, or else because the fireman, without waiting to see if the coupling had been properly and safely made, kept on backing the train. He testifies that he continued to back the train because one of the brakeman, but not the appellee, signaled him to do so; and if so, it is probable that it was the one who had returned from the trip for the flour.

It is evident, however, that the two portions of the train came together with great force. The appellee had gone between them to make the coupling; to save himself he caught hold of the step-ladder upon the side of the box-car next to him, and which was a part of the dead portion of the train; but the wheel of the other car caught his foot, and it was cut off as he was dragged back with the train, and his leg ground and broken off piece by piece, and wrenched from the knee socket, and portions of the bone left along the track.

He brought this action, not by virtue of any statute, but under the general law, to recover damages upon the ground that the injury resulted from the willful and gross neglect of the company's employees in charge of the train. A special verdict was rendered, by which the jury fixed the entire damages at nine thousand dollars, of which eight thousand dollars were given as compensatory and one thousand dollars as exemplary.

The motion of the appellant for a peremptory instruction was properly overruled. The appellee was ordered by the superior officer of the train to make the coupling. It was the duty of the latter, after giving this command, to see and know that the engineer was at his post, or that at least a person competent to operate the train properly was in control of the engine. The appellee had no right, before proceeding to obey the order, to demand information of the conductor as to who was to engineer the train. He had the right to expect that it would be done by the proper person, or one reasonably competent to do so.

Moreover, it appears that immediately after the conductor gave the order he found the engineer in the telegraph office; and yet he did not countermand the direction he had given to the appellee.

It is urged, however, that the injury happened without the knowledge or intervention of the conductor or the engineer; that the appellee saw before he attempted to make the coupling that the fireman was controlling the engine, and that the train was moving rapidly; that the accident resulted, therefore, from the joint neglect of the appellee, the fireman, and another brakeman; and as the two latter had no control over the appellee, but were fellow-servants in a common employment, that therefore the peremptory instruction should have been given. We have already seen that this statement is incorrect as to the conductor; but if it was the custom of the appellant, as appears from the testimony, to permit the fireman upon its freight trains to act as

engineer in coupling and switching the trains, then if the fireman was so acting in this instance he was to all intent and purpose the engineer of the train, and not the common equal fellow-servant of the appellee; and the rule of *respondeat superior* applies.

It was gross neglect upon the part of the conductor to permit this inexperienced boy to operate the train. He ordered the appellee to make the coupling, and before it was attempted he knew that the engineer was not upon the train, and that no one was there to move it save the fireman, and yet he allowed it to be done.

Numerous interrogatories were propounded to the jury; eight by the appellee; eighteen by the appellant, and ten by the court, or thirty-six in all; and the jury found specially that the appellee was injured through the gross and willful neglect of the employees of the company, and that the conductor and engineer were so guilty; fixed the amount of the damages; also that the appellee was not guilty of any contributory neglect; that notwithstanding his conduct the employees of the appellant could, by the exercise of ordinary care, have prevented the injury; that the fireman was not competent to manage the engine, and that it was his duty, before he backed the train to see that the appellee had made the coupling safely; that the appellee had been in the appellant's employ about two weeks, had been acting as a brakeman for four or five years, and was an experienced one; that when he undertook to make the coupling he did not let the pin fall and stoop to pick it up and thus get caught; that the

fireman was not accustomed to, but was permitted to operate the engine, and was not ordered by the conductor or the engineer to take charge of it when the appellee was hurt, and that the latter saw no one upon it but the fireman when he undertook to make the coupling; that the fireman was guilty of willful neglect in operating the train when the appellee was injured, and that it was the custom of the fireman upon the appellant's road, in the absence of the engineer, to operate the engine in coupling and switching freight trains; that the conductor did not know, when he ordered the train to be coupled, that the engineer was not upon the engine, and no one but the fireman; that both he and the engineer, when the train was put in motion, were in the telegraph office, one hundred and twenty-five yards distant from the engine, getting necessary orders, but knew it was done by hearing the jar; that the order to the appellee by the conductor to couple the train was a positive one; that the appellee did not signal the fireman to move the train, but that the other brakeman did; that when the appellee attempted to make the coupling the live portion of the train was moving rapidly, but he did not see it in time to save himself; that he had never before known this fireman to act as engineer; that the latter did not back the live portion of the train in a careful manner, or give the appellee time to make the coupling, but believed, when he continued to back it, that it had been made safely, and did so by reason of the signal from the other brakeman.

It is contended that the general findings, such as

the existence or non-existence of negligence, must be controlled by the finding of specific facts; and that as the jury found that the fireman was not directed by the conductor to move the train, and the appellee knew that he was doing so, that therefore it appears by the facts found that the conductor was not guilty of gross neglect, while the appellee knowingly brought about his injury; and that, therefore, the lower court should have rendered a judgment upon the findings for the company.  The same reasons, however, which are mentioned above, for not giving a peremptory instruction, forbade such a judgment.

When one enters upon an employment for another he assumes all the ordinary risks attendant upon it; and where a number of persons enter a common employment for another, all being upon a common footing and none superior or subordinate to the other, and one receives an injury by the neglect of another in the discharge of the undertaken duty, they are regarded as the agents of each other, and no recovery can be had against the employer.

It was once the English rule that it did not matter if the injured servant was subordinate to the neglectful one and under his control; or if they were engaged in different grades and departments of the service.  To hold the master responsible he must have had some personal connection with the injury, provided, of course, that he was not neglectful in the selection and retention of his servants.

This rule in that country seems yet to prevail, as well as in many courts of this country, save that if the injured party be in a different grade of the

service from the neglectful one, then the employer may be made responsible. The establishment of this rule in many of our States is largely due to the influence of the opinion of Chief Justice Shaw in the case of Farwell v. Railroad Co., 4 Met., 49. The courts of Ohio and this State have, however, extended this rule; and the leaning in New York is in the same direction, and they hold not only that the master is liable for an injury to one servant by the neglect of another, if they are engaged in different grades of the employment, but that he is also liable, although they may be engaged in the same common employment, provided the neglectful one is superior to or in control of the injured one. (Railroad Co. v. Stevens, 20 Ohio, 415; Same v. Keary, 3 Ohio St., 201; Malone v. Hathaway, 64 N. Y., 5; Railroad Co. v. Collins, 2 Duvall, 114; Same v. Cavens' Adm'r, 9 Bush, 559.)

The rule as thus laid down is to our mind the proper one, and consistent with public policy. The Supreme Court of the United States in the case of the C. & M. Railroad v. Ross, 112 U. S., 377, after ably reviewing both the English and American cases, has adopted the Ohio and Kentucky rule as the correct one.

Here the conductor had the entire control of the train, and subject to him, to a certain extent, the engineer had control of the brakemen.

These two superior officers were the personal representatives of the corporation as to the appellee; and for the gross neglect of either the corporation is responsible. In no proper sense of the term were

they fellow-servants of the appellee. The brakemen were fellow-servants under the control of these two officers, who represented the corporation. Their acts were its acts, and their neglect or that of the fireman, if he was permitted to act as engineer, was the neglect of the company. It was constructively present in them.

Applying the rule thus sanctioned by the Supreme Court, the appellant is responsible for the appellee's injury. All necessary questions, indeed, more than were necessary, were asked of the jury, either to develop the facts fixing or excusing negligence. It is urged that some of the answers are unmeaning, and can not be understood, especially to the fourth interrogatory propounded by the court, and which included several distinct questions. It is, however, evident that the answer was to the first one, and it being answered in the negative, no answer was necessary to the others, as they were altogether based upon the idea of an affirmative answer to the first one.

The three general instructions defining the different degrees of negligence were correct beyond question, unless it be the second one, and it was, if anything, more favorable to the appellant than it had a right to expect.

It is urged that no instruction was given defining contributory neglect. None, however, was asked by the appellant. Moreover, the jury found, that notwithstanding the acts of the appellee, yet the injury could have been avoided by the exercise of reasonable care upon the part of the appellant's other

employees. The verdict, in the light of others which have been sustained by the courts of the country, and upon the facts of the case, can not be regarded as excessive. The appellee is shown to have been an excellent brakeman, and in the prime of young manhood; dependent upon his labor for his living; uneducated and unfitted for any employment, save one of manual labor. He is now disabled for life, and unfitted for the calling in which he had educated himself, and which he appears to have adopted. This has resulted, as the jury have said, and as we think correctly, from the gross and willful neglect of those whom the appellant had placed in charge of him in the discharge of what is at best an exceedingly dangerous duty.

Judgment affirmed.