Greer v. Louisville & Nashville Railroad Co.

CASE 25—PETITION ORDINARY—MARCH 11.

# Greer v. Louisville & Nashville Railroad Company.

# Louisville & Nashville Railroad Company v. Greer.

| 94 | 169 |
|----|-----|
| 100 | 445 |

| 94 | 169 |
|----|-----|
| f104 | 517 |

| 94 | 169 |
|----|-----|
| 118 | 275 |

| 94 | 169 |
|----|-----|
| 121 | 532 |
| f121 | 533 |
| 122 | 745 |

| 94 | 169 |
|----|-----|
| 125 | 362 |
| 127 | 740 |

APPEALS FROM MARION CIRCUIT COURT.

1. GROSS NEGLIGENCE.—The absence of slight care in the management of a railroad train is gross negligence.

2. NEGLIGENCE — EVIDENCE.—As the only negligence alleged in the petition related to the act of driving or operating the train, it was error to admit evidence as to the unsafe and defective condition of the track or of any portion of the train's make-up. And, although negligence in these regards was not made the subject of an instruction, the evidence was prejudicial, as these circumstances were not detailed as mere incidents of the transaction, but witnesses were introduced solely on these matters, and for the express purpose of making them the basis of a claim for damages.

3. AN AMENDED PETITION tendered by plaintiff at the appearance term, setting up additional acts of negligence, should have been filed, as it did not change the cause of action; but the court having rejected it, it was error to defendant's prejudice to admit evidence as to such additional acts of negligence, such evidence not being competent under the original petition.

4. LIFE TABLES AS EVIDENCE.—In an action to recover damages for personal injuries permanent in their nature, it is not improper to admit in evidence standard life tables to show the expectancy of life of a person of the age of plaintiff. But the proof must be taken subject to the conditions surrounding the plaintiff, and hence the existence of disease tending to shorten life may be shown.

5. MEASURE OF DAMAGES FOR PERSONAL INJURIES.—In such cases the jury should be instructed that in estimating the damages they are to take into consideration the age and situation of plaintiff, his earning capacity and its probable duration, his bodily suffering and mental anguish resulting from the injuries received, and the loss sustained by the want of the limb injured, and the extent to which he is disabled from making a support for himself by reason of the injury.

6. FELLOW-SERVANTS.—As the plaintiff received his injuries while acting as brakeman he must, in order to recover, show that he was injured.

through the negligence of employes who were his superiors in point of authority and control, and also that their negligence was gross, as the only negligence complained of was that of servants associated with him in conducting the cars. It is only when the injured employe and the negligent employe are in different departments of service that a recovery may be had for ordinary negligence.

7. SAME.—A fireman, when acting as engineer, is the superior of the brakeman.

8. RAILROADS—INJURY TO BRAKEMAN — INSTRUCTIONS TO JURY.—It was error to instruct the jury that if the risk and danger of going between the cars was "open and visible" to plaintiff when he went in to do the uncoupling, they should find for defendant. While the brakeman must take the ordinary risk of going between cars when in motion, and such risk is necessarily open and visible, the company is not relieved from liability for the gross negligence of the conductor and engineer in failing to exercise any care for his protection while thus in peril.

W. J. LISLE FOR LOUISVILLE AND NASHVILLE RAILROAD COMPANY.

1. One entering service is presumed to understand the business and to be able to transact it with experience and skill, and he can not be heard to complain that he did not have the experience and skill. (Alexander v. Lou. & Nash. R. Co., 83 Ky., 589; Bogenschutz v. Smith, 84 Ky., 330; Derby's Adm'r v. Ky. Cent. R. Co., 9 Ky. Law Rep., 153; Ray v. Jeffries, 86 Ky., 367.)

2. A servant can not recover of the master for the negligent acts of a co-servant, unless that co-servant was his superior in the prosecution of the business resulting in the injury. And among brakemen on a train one is not the superior of the other. (Collins v. L. & N. R. Co., 2 Duv., 114; L. & N. R. Co., v. Cable, 9 Ky. Law Rep., 439; L. & N. R. Co., v. Coniff's Adm'r, 90 Ky. 560.)

And the philosophy of this rule is that a servant necessarily assumes the risks and hazards ordinarily incident to his business, such as with ordinary care he can guard against. (Sullivan v. Louisville Bridge Co., 9 Bush, 81; N. N. & M. V. Co. v. Bowles, 13 Ky. Law Rep., 208.)

3. If to do any act is plainly and openly attended with danger and likely to result in injury to the servant, the law requires such servant not to comply with the master's direction requiring the act done, otherwise the servant takes the risk of accident on himself. (Beach on Contrib. Neg., sec. 135; Wood on Railways, p. 1454; Sullivan v. Lou. Bridge Co., 9 Bush, 81; Quaid v. Cornwall, 13 Bush, 604; Needham v. L. & N. R. Co., 85 Ky., 423.)

4. It was error to appellant's prejudice to permit appellee to prove to the jury his life expectancy by the mortality tables.

The case of L., C. & L. R. Co. v. Mahoney's Adm'r, 7 Bush, 238, distinguished.

5. As no question was raised in the pleadings as to the safety of the track or defective condition of materials used by plaintiff or of injuries to his arm, the court erred in submitting testimony as to those matters. (Bogenschutz v. Smith, 84 Ky., 330.)

6. The Code forbids a new trial on account of the smallness of damages in an action like this. (Civil Code, sec. 341.)

HUGH P. COOPER for Greer.

1. The court erred in striking from plaintiff's reply all that part which referred to the guard rail, and in excluding from the jury, by instructions, the question of negligence with reference to that matter.

2. The court erred in the same line by refusing to permit plaintiff to file his amended petition.

3. The court should have given instruction No. 7 asked by plaintiff.

4. The absence of slight care in keeping a railroad track in repair is gross negligence.

5. The employes of a railroad company whose duty it is to keep the track in repair are not fellow servants of the brakemen.

Cited on the whole case: Lou. & Nash. R. Co., v. Mitchell, 87 Ky., 327; L. & N. R. Co. v. Moore, 83 Ky., 675; N. N. & M. V. Co. v. Dentzel's Adm'r, 12 Ky. Law Rep., 626; L., C. & L. R. Co. v. Mahoney's Adm'r, 7 Bush, 235; Maysville, &c., R. Co. v. Herrick, 13 Bush, 127; Ky. Cent. R. Co. v. Boyd, 13 Ky. L. R., 862.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

James Greer, as plaintiff in the lower court, brought this action against the Louisville and Nashville Railroad Company for negligently driving its car or cars upon and over his leg, crushing it in such manner as to cause its necessary amputation, and alleging that by reason of the defendant's negligence, plaintiff lost his left leg, and endured great mental and physical suffering, &c., to his damage in the sum of twenty-five thousand dollars. He recovered the sum of two thousand five hundred dollars. Thereupon the defendant prosecuted an appeal to the Superior Court and the plaintiff prosecuted one to this court. On plaintiff's

motion the case in the Superior Court was transferred here, and the two appeals—being one and the same case—are heard together.

At the Lebanon switch-yard, on the line of defendant's road, it became necessary to place two gondola cars on one of the side tracks and some box-cars on another. There was some haste required, as the conductor's purpose was to keep from being held there by the next train going south. So Greer was directed by the conductor, when asked if he wanted the cars placed back against the "dead" cars, "to just drop them in clear of the main track," as he was in a hurry. "Dropping them back" meant "to cut them loose whilst moving, so that the loose cars would roll back to their place by the dead ones." The conductor then signaled the engineer to back in, and it appears left, going south several car lengths toward the depot, and when the accident happened was engaged in chalking some cars to indicate their destination. The plaintiff went in to uncouple or cut loose the two cars in obedience to the instructions as he understood them, not knowing but that the conductor was near at hand to protect him. He found the pin crooked so that he could not pull it out, and walked with one foot on the outside and the other on the inside of the track for some fifteen or twenty feet, when, as affording him more strength for extricating the pin, he brought both feet within the rails of the track, and after taking a step or two his foot caught on the end of the guard-rail, or, as testified to by him, "a splinter on the guard-rail at the frog of the switch stuck into the toe of his shoe." With his right

hand he had hold of the car in his front, and pulled his foot loose, but, losing his balance, was dragged some distance, when he fell to the ground on his hands and feet, and ran in that way some distance. From the guard-rail splinter to where he finally threw his body from under the car when his foot was caught was some twenty-five yards.     When he went in to uncouple the cars, he testifies, they were moving at the rate of about two miles an hour, but their speed was increased rapidly, and they were going, when plaintiff was injured, about five miles per hour.    The train struck the "dead" cars violently, knocking them back some seventy feet.    A fellow-brakeman was on top of one of the box-cars, and saw Greer when he first started to fall, and testifies that he got down off the car and ran out on the opposite side from him in order to signal Martin, the fireman, who had been left in charge of the engine by the regular engineer. The fireman was waiting for signals, and appears to have known nothing of the trouble until it was about over.

In this connection it may be observed that the company introduced an order or certificate of its master mechanic, of date December 11, 1890, to the effect that Martin was declared competent, and was authorized to handle an engine as per rule 207, which made it "the duty of an engineer to handle his engine at all times, but a fireman may do so at a station in the immediate presence of the engine-man, provided the master mechanic has declared him competent."

This declaration of competency was some six weeks after Martin had been left in charge of this engine, in violation, it appears, of rule 207.

Upon this state of case the defendant company moved the court for a peremptory instruction in their behalf, which, we think, was properly overruled. That there was some negligence we have no doubt, and that, too, on the part of employes superior to the plaintiff in point of employment and control of the train. It is true that there must have been gross negligence in this case before the plaintiff can recover, but as was said in Louisville and Nashville Railroad Company v. Mitchell, 87 Ky., 337: "Certainly the absence of slight care in the management of so dangerous an agency as a railroad train is gross negligence."

On the trial much prominence was given to the testimony of various witnesses as to the condition of the guard rail, the crooked pin and the injured condition of plaintiff's arm. This testimony was objected to by the defendant, and we think the objection should have been sustained. These circumstances, if regarded as a mere matter of detail, or as incidents of the transaction, might not have been objectionable, as it is hardly possible to detail the occurrence without stating all the conditions and surroundings as they existed at the time. But witnesses were introduced solely on these matters, and for the express purpose of making them the basis of a claim for damages. This was not proper under the pleadings. The unsafe or defective condition of the track, or of any portion of the train's make up, or the sprained condition of plaintiff's arm, was not the subject matter of inquiry. These defects were not alleged as grounds of complaint or as matters of neg-

ligence. Nor are they so connected or interwoven in any way with the act of driving or operating the train—the only negligence charged in the petition— as to be the proper subject of testimony. That its introduction was prejudicial to the defendant is apparent; indeed the argument of plaintiffs counsel in this court consists largely in denouncing the negligence of defendant, as shown by the unsafe track and the crooked pin. What must have been his appeal to the jury? And while these alleged evidences of negligence are not made the subject of an instruction, and for that reason might be regarded under some circumstances as having been withdrawn from the jury's consideration as a basis for finding damages for negligence, it is evident that such was not the effect on the trial below. But the case having to go back, it is proper to say that the amended petition tendered by the plaintiff at the appearance term of the case, setting up these additional grounds of complaint as matters of negligence, should be permitted to be filed. The cause of action is not changed. The alleged acts of negligence all may have concurred to cause the injury. It was error to the plaintiff's prejudice to refuse to allow it to be filed, but the court having rejected it, the defendant was under no legal requirement to meet it by counter proof, and may not have been prepared to try the case on issues not presented by the pleading.

In the case of Cincinnati, &c., R. Co. v. Barker (94 Ky., 71), decided at this term, where the subject matter of the negligence charged was the setting fire to a depot, it was held that the construction and

combustibility of the structure alleged to have been fired were necessarily and naturally proper subjects of inquiry and of instruction. In this case, the act of driving the car over the plaintiff involved only the operation and management of the train, and was in no way connected with the unsafe condition of the guard-rail or the crookedness of the coupling pin.

It is insisted by the company that it was error to its prejudice to permit the witness, Blandford, a life insurance agent, to read as evidence to the jury the American Life Table, showing the expectancy of a man of plaintiff's age. On this there appears to be no direct authority or precedent in this State. The cases in which such testimony has been offered and approved have been those in which loss of life has occurred.

In Thompson's Carriers of Passengers, 565, it is said: "It is also competent for the plaintiff to show that the injuries complained of are permanent in their nature; that he will probably not recover from their effects; and when there is such testimony, it is not improper to introduce in evidence standard life tables to show the expectancy of life of one of the age of the injured party as a basis upon which to estimate the amount of damages he should recover."

It is said "that in actions for personal injuries occasioned by the negligence of the defendant, on the question of damages, it is not only proper but important for the plaintiff to show, by the evidence, his previous physical condition and ability to labor or follow his usual avocation, as well as his condition since the injury, to enable the jury to properly find the pe-

cuniary damage." (City of Joliet v. Conway, 119 Ill., 489.) And if so, and we think the doctrine appears reasonable, there would seem to be no reason why, as the ability to labor and the earning capacity of the injured party may be inquired into, the duration of that capacity and ability to labor may not be ascertained by the usual mode of computing the probable length of life. But the proof must be taken subject to the conditions surrounding the particular individual under investigation. Hence, the existence of disease tending to shorten life may be shown, and it must also be borne in mind that mere probable continuance of life is shown by such tables, not the duration of ability to work or to earn money in old age. (Sedgwick on Damages, volume 2, section 581.) And when we add to these complications that a proper discrimination must be made between the lessening of earning capacity by reason of the loss of a finger and that occasioned by the loss of a leg, we confess the introduction of such testimony will hardly tend to enlighten the jury to any great extent. We can not say, however, that such proof is incompetent. On the whole, it would seem better, if the jury are to find for the plaintiff in a given case, that they should be instructed in estimating the amount of the damages, to take into consideration the age and situation of the plaintiff, his earning capacity and its probable duration, his bodily suffering and mental anguish resulting from the injury received, and the loss sustained by the want of the limb injured, and the extent to which he is disabled from making a support for himself by reason of the injury received. (Whalen v. St. Louis, &c., R. Co., 60 Mo., 324.)

By instruction "I," given at the company's instance, and properly, the jury were told not to find for plaintiff, unless they believed from the evidence "that those superior in authority to plaintiff in operating the train, with gross negligence ran said train or car wheels over plaintiff's ankle and crushed it."

But in No. 1, given by the court over the defendant's objection, they are told that if the preponderance of the evidence shows that the defendant's employes in operating their train, or failing to control its movements properly, were guilty of ordinary, gross or willful neglect, by which plaintiff was injured, &c., the law was for the plaintiff.

This instruction is erroneous in two respects. The employes must have been those who were superior to plaintiff in point of authority and control, and the negligence must have been gross.

In the leading case of Louisville and Nashville R. R. Co. v. Collins, 2 Duv., 114, and which has been followed invariably since in this court, Judge Robertson said : "It"—the company—"is therefore responsible for the negligence or unskillfulness of its engineer as its controlling agent in the management of its locomotives and running cars, and that responsibility is graduated by the classes of persons injured by the engineer's neglect or want of skill—as to strangers, ordinary negligence is sufficient—as to subordinate employes associated with the engineer in conducting the cars, the negligence must be gross—but as to employes in a different department of service, unconnected with the running operations, ordinary negligence may be sufficient;" and it may be here added

that a fireman, when acting as an engineer, is, of course, an employe, superior to the brakeman. (Louisville and Nashville R. Co., v. Moore, 83 Ky., 675.)

At the defendant's instance, and over the plaintiff's objection, the jury, by instruction "A," were told that if the risk and danger of going between the cars was apparent, open and visible to plaintiff when he went in to do the uncoupling of the cars, the jury should find for the defendant. This is misleading and erroneous. The brakeman may, indeed must, take the ordinary risk of going between cars when in motion, as the practice is shown to exist by common acquiesence, if not at the express direction of the companies, and such risk is necessarily open and visible; but it by no means follows that the conductor and engineer may desert him in his hour of peril, and the company be relieved of the consequences of the gross negligence of these officials, if guilty of such negligence, although the danger and risk imposed on the inferior employe be open and visible.

The errors considered on the two appeals appearing to have been to the prejudice of both plaintiff and defendant, this seems to be a proper case for a division of the costs of the appeals, and such may be made.

Let the judgment be reversed, and cause remanded with directions to proceed as herein indicated.