CASE 83.—ACTION BY JOE HART AGAINST THE LOUIS-
VILLE BOLT & IRON Co., FOR DAMAGES FOR
PERSONAL INJURIES.—May 4.

## Louisville Bolt & Iron Co. v. Hart

Appeal from Jefferson Circuit Court (C. P. Branch, 2d Div.)

THOMAS R. GORDON, Judge.

Judgment for plaintiff. Defendant appeals. Affirmed.

1. Master and Servant—Injury to Servant—Defective Appliances —Evidence—Where, in an action for injury to a servant engaged in removing the dross from a furnace in which iron was reduced to working metal it was alleged that the employer furnished an insufficient number of buggies in which to catch and remove the dross, the testimony of a person with twenty-five years' experience in similar work in the empolyer's and similar foundries with respect to the universal custom in such foundries in reducing iron to working metal was admissible on the issue whether the employer furnished sufficient appliances.

2. New Trial—Newly Discovered Evidence—Discretion of Court —In an action for personal injuries, plaintiff was surprised at the testimony of a witness introduced by defendant who

claimed to have seen the accident. The plaintiff and this witness were the only persons who claimed to have seen the acident. On a motion for a new trial plaintiff showed by several witnesses that defendant's witness was elsewhere when the accident occurred. Held, that the newly discovered evidence was more than impeaching evidence and authorized the granting of a new trial.

3. Master and Servant—Injury to Servant—Assumption of Risk—A servant who, with knowledge of the dangerous condition of the premises, undertakes to do the work assigned, assumes the risk, unless the master promises to repair them, in which case the servant can for a reasonable time continue in the work without assumption of risk, relying on the master's promise.

4. Damages—Personal Injury—Mortality Tables—Admissibility—Where, in a personal injury action, damages for loss of capacity to earn money are sought, mortality tables are admissible on the issue of damages.

FORCHT & FIELD, counsel for appellant.

POINTS AND AUTHORITIES.

The trial court erred in granting appellee's motion for a new trial:

1. Evidence as to methods usually employed is not admissible to establish negligence on the part of a master not employing them.

(a) The admission of such evidence would be to overturn the substantive law by a mere rule of procedure and to institute a comparison. Safety of methods and appliances is to be tested by the actual condition. (Berberich v. Louisville Bridge Co., 20 Ky. Law Rep., 467; 4 Thompson on Negligence (2 Ed.); 1 Labatt, Master and Servant, 35, 39; Wood v. Hedges, 83 Md., 257; Augustein v. Jones, 139 Pa., 183; North Cent., &c. Co. v. Hussen, 101 Pa., 1; Evans v. Hassler, 1 Bibb., 561; Kent v. Yazoo, &c. Co. 77 Miss., 494; Gravadahl v. Chicago, &c. Co., 85 Ill. App., 342; C. I. &E. R. R. v. Finnan, 84 Ill. App., 383; Conway v. Hannibal, &c. Co., 24 Ill. App., 235; Tex. Pac. Co. v. Bellemeyer, 189 U. S., 468; Rooney v. Sewall Cordage Co., 152 Mass., 153; McCarthy v. Boston Duck Co., 165 Mass., 165; Kehler v. Schwenk (Pa.), 13 L. R. A., 374.)

(b) If, as the general rule, such evidence is admissible, the testimony of Frick and Patterson failed to meet the conditions

Louisville Bolt & Iron Co. v. Hart.

precedent to its application. They did not show themselves qualified, did not show any similarity between appellant's mills and other mills, and did not show that any general method prevailed. (1 Labatt, Master and Servant, 53; Berberich v. Louisville Bridge Co., 20 Ky. Law Rep., 467; R. & D. Ry. v. Weems, 97 Ala., 270; L. & N. v. Jones, 30 So., 586; Apati v. D. L. & W. Ry., 72 N. Y. Supp., 322; Saucier v. Spinning Mills, 72 N. H., 295; Hall v. R. R. Co., 55 Me., 438; Littleton v. Richardson, 32 N. H., 59; Hubard v. Conrad, 35 N. H., 52; Corydon v. Company, 66 Vt., 255; Taber v. Judd, 62 N. H., 288; McCarthy v. Boston Duck Co., 165 Mass., 165; Dolan v. Boot Cotton Mills, 185 Mass., 576; Veginan v. Morse, 160 Mass., 143; Ford v. Mt. Tom. Co., 172 Mass., 544.)

2. The effect of the alleged newly discovered evidence was only to discredit the witness, Williams, and such evidence is insufficient as a ground for a new trial. (Barrett v. Belshe, 3 Bibb., 348; Findlay v. Taylor, 1 Litt., 161; Clarke v. Rutledge, 2 A. K. M., 381, Fowler v. Gordon, 3 Ky. Law Rep., 616; Hall v. French, 10 Ky. Law Rep., 399; Rider v. Sullivan, 15 Ky. Law Rep., 749; Mercer v. Mercer, 87 Ky., 21; L. & N. v. Tinkham's Admx., 19 Ky. Law Rep., 1784; Louisville Ins. Co. v. Hoffman, 24 Ky. Law Rep., 980; Miller v. Potter, 102 Ill. App., 483; Smith v. Shook, 75 Pac., 313; Railroad v. Wellver, 105 Ill. App., 652; Railroad v. Stewart, 203 Ill., 223; Davis v. State, 116 Ga., 87; Springer v. Shultz, 105 Ill. App., 554; Pelby v. Dennison, 78 S. W., 542.)

## ERRORS ON THE SECOND TRIAL.

A. The instructions:

1. The first, second and third instructions submitted a question not in issue under the pleadings and evidence, and were inconsistent and misleading. (1 Blashfield, Instrucions, 83; Purdom v. Brussels, 25 Ky. Law Rep., 1796; Orth v. Clutz, 18 B. M., 223; Ray v. Sellers, 1 Duv., 254; Dignan v. Elliott, 9 Ky. Law Rep., 982; Cent. Pass., &e., Co. v. Rose, 15 Ky. Law Rep., 582; Doysher v. Adams, 16 Ky. Law Rep., 582; L. & N. v. Mattingly, 22 Ky. Law Rep., 489; Hydinger v. Chicago, &c., Co., 101 N. W., 746; Fanboin v. West U. T. Co., 81 S. W., 56; L. & N. v. Guyton, 36 So., 84; L. & N. v. Kimbrough, 24 Ky. Law Rep., 2410; Behen v. St. Louis Traction Co., 85 S. W., 346; Eddy v. Bosley, 78 S. W., 565; St. Louis, &c., Co. v. Corrigan, 81 S. W., 554; Stern v. Westchester, &c., Co., 90 N. Y. S., 870.)

2. The second instruction:

(a) Was erroneous in not requiring the jury to believe that appellee was injured by reason of the defect of which he complained. (Avery & Sons v. Meek, 96 Ky., 195; 4 Thompson on Negligence, 3856; 2 Labatt, Master and Servant, 804; Lockridge v. Fessler, 18 Ky. Law Rep., 469; Franks v. Head, 19 Ky. Law Rep., 1128; Brown v. L. & N., 103 Ky., 211; Bailey v. C. N. O. & T. P., 14 Ky. Law Rep., 226.)

(b) Was erroneous in not limiting appellee's right to rely on the promise to a "reasonable time." 1 Labatt, Master and Servant, 429; 4 Thompson, Negligence, 5668; Louis. Hotel Co. v. Kaltenbrun, 26 Ky. Law Rep., 208; Bell v. Applegate, 23 Ky. Law Rep., 470; Breckinridge v. Hicks, 94 Ky., 362; Reiser v. South. P. M. & L. Co., 24 Ky. Law Rep., 996; Mann v. Lake Shore, 124 Mich., 641; Taylor v. Star Coal Co., 110 Ia., 40; L. & N. v. Kenley, 92 Tenn., 207.

(c) Was erroneous in not submitting the question as to whether the danger was so obvious that an ordinary person would not have relied on the promise. (Louis. Hotel Co. v. Kaltenbrun, 26 Ky. Law Rep., 208; 4 Thompson, Negligence, 4658; 1 Labatt, Master and Servant, 428.)

(3) The first, third and fourth instructions are erroneous as to the possibility of appellee's knowledge of the danger. (Ky. Freestone Co. v. McGee, 25 Ky. Law Rep., 221; Ahrens, &c. v. Rellihan, 26 Ky. Law Rep., 919; Ill. Cent. v. Keebler, 27 Ky. Law Rep., 305; Lasch v. Stratton, &c., 101 Ky., 672; Wake & Co. v. Price, 24 Ky. Law Rep., 696; Ill. Cent. v. Langham, 25 Ky. Law Rep., 500; Clay City L. Co. v. Noe, 25 Ky. Law Rep., 668; Henderson L. & E. Co. v. Wheeler, 25 Ky. Law Rep., 495; L. & N. v. Roberts, 24 Ky. Law Rep., 1160; Ohio V. R. R. Co. v. McKinley, 17 Ky. Law Rep., 1208; Covington, &c., v. Clark, 25 Ky. Law Rep., 694.)

B. The court erred in allowing appellee to introduce the Wigglesworth Life Tables to show appellee's exceptancy of life. (Greer v. L. & N., 94 Ky., 169; 2 Jones, Evidence, 594; Nelson v. C. R. I. & P., 38 Ia., 564; C. B. & Q. v. Johnson, 36 Ill. App., 564.)

BRADLEY & BATSON for appellee.

POINTS AND AUTHORITIES.

FIRST TRIAL.

1. The court did not err in granting a new trial.

(a) It is competent to introduce evidence of the usual and

ordinary method of handling tap-cinders by rolling mill companies generally, engaged in the same character of business as tending to show care or negligence and knowledge, or each of them, on the part of appellant in this case. (20th Am. & Eng. Ency., 55; Wigmore Ev., vol. 1, sec. 461; Maynard v. Buck, 100 Mass., 40; Croker v. Pac. Lounge & Mattress Co., 75 Pac., 632; Bodie v. C. & W. C. Ry., 44 Southwestern, 943; Belville Stone Co. of N. J. v. Comben, 39 Atlantic 641; Nadau v. White River Co., 76 Wis., 120; Richmond Locomotive Works v. Ford, 94th Va., 640; Kelly v. Southern Minn. Ry. Co., 28th Minn., 98; Holland v. Coal, Iron & Railway Co., 91st Ala., 444; Berberich v. Louisville Bridge Co., 20 Ky. Law Rep., 467; Ga. Pac. Ry. v. Propst, 83rd Ala., 518; Dole v. Manitoba Ry., 42 Minn., 79; Houston Ry. v. Cowser, 57 Texas, 293; Kolsti v. Minn & St. L. Ry., 32 Minn., 133; Miller v. I. C. Ry., 89th Iowa, 567; Bridger v. Ashville Ry., 27 S. C., 456.)

(b) The new trial was properly granted because of the newly discovered evidence. (Sleet v. Mozley, 9 Dana, 135; Miller v. Field, 3 A. K. Marsh., 110; Fabrillins v. Cook, 3 Burr, 1771; 2 Tidd's Practice, 936; Hammond v. Wadhams, 5 Mass., 353; Arthur v. Charis, 6 Rand, 142.)

### SECOND TRIAL.

2. The court did not err in its instructions. (Louisville Hotel Co. v. Kaltenbrun, 80th Ky. Dec., 1163; Northern Pac. Ry. v. Babcock, 14th Sp. Ct. R., 978; Breckinridge v. Hicks, 94 Ky., 362; North's Adm'r v. K. C. Ry. Co., 9th Ky. Law Rep., 480; Milliam v. Riley, 1st Dana, 363.)

3. The court did not err in permitting the introduction of life tables, and if so, it did in no way prejudice appellant. (Greer v. L. & N. Railway Co., 94th Ky., 169.)

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

This case was twice tried in the Jefferson circuit court, common pleas branch, second division. The first trial resulted in favor of appellant. A rehearing being granted, appellee obtained a verdict for $3,000. Appellant excepted to the order granting the new trial, filed a bill of exceptions and a transcript of the

testimony on the first trial, and now seeks a reversal
of the lower court on the ground that the order
awarding a new trial was erroneous. Appellant also
filed a bill of exceptions, and a transcript of the testi-
mony on the second trial, and seeks to reverse the
second judgment.

Appellant conducted a rolling mill. Appellee, in
its employ, was injured by the explosion of a tap
cinder. When iron was being melted in a heating
furnace, the dross in it was run off in a molten state
through a small hole at the bottom and rear of the
furnace. It was then caught in a small iron buggy
on two wheels, holding some 200 pounds. When full,
the buggy was drawn away and dumped, another
buggy being substituted at the tap hole. This dross
is called "tap cinder." As it runs into the buggy it is
cooled by contact with the sides and by the air, and it
gradually hardens. The center, however, remains
longer in a molten state, and generates a gas which
keeps the top perforated for its escape. As long as
it escapes there is no danger; but, if confined, the
increasing volume of gas generated will produce
a violent explosion. There is a contrariety of opinion
among the witnesses in the case as to the action of
water upon this tap cinder. Some hold that it will
have no effect if poured on top of the cinder in a
buggy, unless it closes the vents through which the
gas escapes. Others hold that it will cause an explo-
sion in any event. At any rate, the evidence sustains
the verdict of the jury, which in its result necessarily
found the danger to be as first stated, and as testified
to by appellee's witnesses. Appellee was engaged
for the first time in the work in which he was injured,
but a few days before the accident. His duty was to

Louisville Bolt & Iron Co. v. Hart.

catch the dross at the tap holes of the furnaces in
the iron buggies, and wheel it away a few yards to a
dumping ground, where it was deposited by him, and
subsequently removed by others.  Directly overhead,
and above the route he had to take in hauling the tap
cinders, was a steam exhaust pipe, temporarily in use
because of some defect in the boiler in appellant's
engine room, which spurted water in greater or less
quantities at irregular intervals; the water falling to
the ground beneath.  Only two buggies were provided
by appellant in which to catch and remove the tap
cinders.  If the tap cinder could have been let stand
long enough in the buggies before emptying, they
would have solidified by cooling; thus removing all
possibility of danger from an explosion by coming in
contact with water or otherwise having the pores
prematurely closed.  It was claimed by appel-
lee that at least a dozen such buggies should
have been provided for that work, so as to allow its
being done with reasonable safety.  Thus it will be
seen that two grounds of negligence were asserted by
appellee: One, that appellant furnished him insuffi-
cient and unsafe tools or implements with which to
work; and the other, that he was furnished an unsafe
place in which to work.

After having worked at this job for a day or so,
appellee learned through the statement of a passing
employe that it was highly dangerous, on account of
the escaping water being liable to fall on a tap cinder
while being removed before it was sufficiently cooled,
which would cause it to explode.  He immediately
complained of the dangerous condition of the
premises to the superintendent, who directed him to
another superior servant, who promised to repair the

defect the next morning—Sunday. Early Monday morning, just after he had begun the day's work, and before he was aware the defect had not been remedied, while removing a buggy of tap cinder, the water suddenly shot from the pipe and fell upon the cinder, causing it to explode, permanently and seriously injuring and maiming appellee. It was for this he sued.

Appellant first contends that the trial court erred in granting the new trial. This action of the court was said to be, and may be assumed to have been, rested on two grounds, viz.: The exclusion of the testimony of Frick and Patterson, witnesses for appellee, and that of newly discovered evidence. Frick and Patterson testified as experts. They qualified by showing that they had had many years'—perhaps 25 years or more—experience in appellant's and similar foundries, and in the identical or similar work as that in which appellee was engaged when injured. They showed that they were familiar with the mode of doing such work in rolling mills similar to appellant's mills. They then testified that it was the universal custom in such mills, in melting iron and reducing it to working metal and dross, to melt it in a furnace having a tap hole at the base through which the dross would run. The dross was always and necessarily caught in some movable receptacle, and when sufficiently cooled by the action of the air was removed, and the receptacle, whether buggy or other contrivance, was then used again, and that to do this required such a number of buggies or receptacles to be provided as would permit of those filled being allowed to stand long enough to cool off before dumping. It was complained that the effect of this

testimony was to admit evidence of comparison between the method in use by appellant and the methods of other iron manufacturers, who had adopted perhaps more improved appliances, from which the jury might be led to infer that the latter methods were the correct standard of care, whereas the true standard is whether the one adopted by appellant was a reasonably safe one, considering the nature of the work and the hazards naturally incident to it. The trial court may have then concluded he had erred in admitting the evidence alluded to. At any rate, he excluded it from the jury. On the next trial the court admitted the same evidence over appellant's objections.

We are of opinion that the evidence was relevant. It was not, as is assumed by counsel for appellant, a comparison of two or more methods employed by different given ironmasters. Nor was the admission of the evidence to fix or substitute a standard of care. It was evidential, receivable with other proper evidence which tended to show whether the work, as it was being conducted, was extra-hazardous or not; as tending to show the common experience of those engaged in the same or similar work as to whether it was safe to do it with more or less buggies or more or less time in which to permit the dross to cool before dumping it. This evidence showed the tendency of the thing which the jury was considering, and as to whether, and under what circumstances, it was in fact dangerous, defective, or the reverse. It is entirely distinct in its nature and scope from the law's standard of care required in the matter, which must be a fixed one, for example, in this case, such care as an ordinarily prudent or careful person would have

exercised under similar circumstances to have protected himself from injury. Of it Wigmore, in his recent work on Evidence, says (Vol. 1, sec. 461). "This conduct of others, then (1), is receivable as some evidence of the nature of the thing in question, because it indicates what is the influence of the thing on the ordinary person, in that suitation; but (2) it is not to be taken as fixing a legal standard for the conduct required by law."

In the well-considered case of Maynard v. Buck, 100 Mass., 40, where the point was raised upon instruction to the jury, instead of the competency of the evidence, the court said that it was not proper to embrace in the instruction a statement that, if the defendant had done the things that persons of ordinary prudence in the same business ordinarily did, it was not negligence. But the court said: "It is evidence of what is proper and reasonable to be done, from which, together with all the other facts and circumstances of the case, the jury are to determine whether the conduct in question, in the case before them, was proper and justifiable." In Nadau v. White River Lumber Co., 76 Wis., 120; 43 N. W., 1135; 20 Am. St. Rep., 29, the plaintiff offered to prove that it was customary in other sawmills to cover gearing of the kind in question. The court held: "This was clearly competent on the question as to whether the defendant was negligent in not covering it in its mills." A correct statement of the practice is found in Richmond Locomotive Work v. Ford, 94 Va., 640; 27 S. E., 509, to-wit: "A witness having sufficient knowledge may testify as to the general practice of machine shops in moving such wheels, and the comparative safety of such methods; but it is not

competent to show, that the different methods of another shop is better than that of defendant.'' In Berberich v. Louisville Bridge Co., 46 S. W., 691; 20 Ky. Law Rep., 467, the question was incidentally considered by this court. The plaintiff in that case sued for an injury caused by defendant's negligence in failing to give him warning while he was working on their bridge that a train was approaching. While the court held that he was not prejudiced by the refusal of the trial court to allow him to show that such was the custom of bridges such as defendant's, because the witnesses did not qualify themselves to speak on the subject, it was added: ''If the witnesses were sufficiently acquainted with bridges, substantially the same as the defendant's bridge, and the customs and necessity of notice, they should have been allowed to testify in regard thereto.''

The evidence complained of in the case at bar was touching technical skill in the handling of a highly dangerous product, one not commonly known and understood. By long experience those skilled in its manipulation had reduced the handling of molten iron and its dross to an art, it might be said. How it should be handled, so as to be reasonably safe to those engaged in the work, was technical knowledge. Without some such evidence  explaining it, a jury would have been unable to say whether the care taken in the particular case was ordinary care or not.

The newly discovered evidence consisted in this: One Tom Williams, introduced as a witness, and about the last one introduced by appellant (defendant), on the first trial testified that he was present when the accident occurred, and that it happened because appellee dumped his cinder upside down on

a wet spot, thus causing the pores to close, and the rapidly generating gas to explode the cinder. The case was then closed, and the verdict of the jury returned for appellant. On his motion for a new trial, appellee showed by half a score or more of witnesses that Williams was elsewhere when the accident occurred, and consequently could not have seen what he testified to. He was completely discredited, as well as thereby contradicted. Appellee showed his surprise at the fact of such testimony being introduced by appellant, as given by this witness. It is contended that a new trial is never granted to allow a witness to be impeached. That is a general rule. But the effect of this evidence was more than to merely impeach the witness. But whether it was or not, he being the only witness who claims to have seen the accident, beside appellee, the materiality and controlling effect of the newly discovered evidence becomes perfectly apparent. As the granting of a new trial is a matter after all largely in the sound discretion of the trial judge, we cannot say it was abused in this instance.

The instructions given on the last trial, though criticised by appellant's counsel for supposed technical inaccuracies, are not erroneous. They submitted to the jury appellant's liability in this: If the place at which plaintiff was put to work was not reasonably safe for the performance of the work in which he was engaged, and its unsafe condition was known to the defendant, or its superior servants in charge, or could have been known to them, by ordinary care, and was unknown to the plaintiff, the law was stated to be for the plaintiff; or if known to the plaintiff, but if he notified the defendant's

superior agents of the unsafe condition, and they promised to repair it, but failed to do it, and plaintiff was induced by such promise to continue the work, believing in good faith, at the time of the injury, that the defect had been repaired, that defendant was liable, and plaintiff was not affected by his own previous knowledge. The effect of this instruction, considered in connection with others given, was to present to the jury, as should have been done, the state of case that would relieve the plaintiff from the imputation of assumption' of risk or contributory negligence in continuing to work on known defective premises. The unfit or dangerous condition of the premises is not an assumed risk by the servant. But if with knowledge of their unfit and dangerous condition he nevertheless undertakes to do the work thereat, he would assume the risk, unless the master promises to repair them, in which event the servant can for a reasonable time continue in the work without assumption of the risk, relying on the master's promise of repair. When the master has promised to repair, after the expiration of a reasonable length of time in which to do it, nothing appearing to indicate that he has not complied with his promise, the servant has the right to assume that it has been done, just as he had the right to assume in the first place that the master had provided a suitable and fit place in which to do the work. Northern Pac. Ry. Co. v. Babcock (U. S.), 14 Sup. Ct., 978; 38 L. Ed., 958.

Nor was the instruction as to the sufficiency of tools erroneous, as claimed by appellant. They did not constitute such an obvious danger as that none but a reckless person would have continued to work with them alone. On the whole, we think the instructions

fairly and fully presented the case to be tried to the jury.

It is contended that the court erred in admitting the Wigglesworth Life Tables to the jury as evidence tending to prove the probable duration of appellee's life. It is argued for appellant that these tables are based upon lives of normal, healthy persons, showing the average life of such: that at the trial appellee, because of these injuries, was not of the class of which the tables were compiled, and they were therefore misleading, for manifestly it was very improbable that a crippled, maimed, badly injured person would live so long as one of the same age, but in normal condition of body and health. The question of damages was not alone what plaintiff would in future be deprived of by reason of the injury dating it from the time of the trial, but to what extent his money-earning capacity had been lessened or impaired (in addition to suffering), and the value thereof, dating the inquiry from the moment of the injury. Appellee's age and state of health then were the facts upon which his expectancy of duration of life was to be based. He was then in normal health and condition. Just what value the life tables would have for the jury in arriving at the damage done to plaintiff is hard to say. Their own observation and experience were doubtless more relied on by them. But the evidence in question was relevant as aid. Its reception does not imply, as argued, that if the life tables show a man of plaintiff's age, in normal health, would probably live so many years, that he would always be able to work, or to always get the same price for his work, as at the time of the injury when he was a young, robust man. There is nothing

better known to men and jurors than that to the aged
come bodily infirmity and failing capacity to labor.
But this common knowledge must be presumed to be
in the mind of the jury. If the life tables show that
a man of appellee's age would probably live to be
70 years old, but for the injury, none are more
competent than an average jury to say how many of
these years would in such state of case have been
available to labor, in all probability, and therefore
how much in money should be assessed as compensa-
tion for the destruction, or for the impairment of
plaintiff's capacity to labor and earn money thereby.
Such life tables were held admissible in Greer v. L.
& N. R. R. Co., 94 Ky., 169; 14 Ky. Law Rep., 876;
21 S. W., 649; 42 Am. St. Rep., 345, and Ill. Cent. Ry.
Co. v. Houchins, 121 Ky. ——; 89 S. W., 530; 28 Ky.
Law Rep., 499.

We see no error in the record prejudicial to appel-
lant, and the judgment is affirmed.