CASE 24—PETITION ORDINARY—SEPTEMBER 23.

# Louisville and Nashville Railroad Co. vs. Collins.

### APPEAL FROM WARREN CIRCUIT COURT.

1. When, on a question of negligence, the testimony is conflicting, the jury have a right to decide the character of the negligence.

2. Although the plaintiff, suing for an injury resulting from the gross negligence of the defendant, may have been guilty of negligence, if, nevertheless, the injury might have been avoided by the proper care of the defendant, such co-operating negligence of the plaintiff will not exonerate the defendant.

3. Railway companies are required by law to observe, at least, ordinary care, vigilance, and skill, so far as strangers are concerned, in operating their trains.

4. The responsibility of railroad companies for injuries resulting from the negligence or unskillfulness of its engineers, is graduated by the classes of the persons injured by the engineer's neglect or want of skill—as to strangers, ordinary negligence is sufficient—as to subordinate employees, associated with the engineer in conducting the cars, the negligence must be gross; but as to employees in a different department of service, unconnected with the running operations, ordinary negligence may be sufficient.

5. Among common laborers, constituting a distinct class, no one of them, as between himself and his coequals, is the corporation's agent; and it is not liable to any one of them for injuries resulting from the acts or omissions of any other one of the class, although each of the company's employees would be its agent as to entire strangers to it.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

This appeal presents, for the first time, to the appellate court of Kentucky, a new and unsettled question, involving the legal liability of railroad companies for damages resulting to an inferior from the negligence of a superior employee, while engaged in different spheres of employment in the common service of any such corporation.

The appellee, while employed by the Louisville and Nashville railroad company, as a common laborer, in loading and unloading its burthen cars engaged in carrying for its road cross-ties and iron, was required, with a co-laborer of the same class, to assist its engineer in righting in Bowling Green, Kentucky, a locomotive which seemed to be out of order, and the steam being up, the front wheels jacked, the hind wheels unscotched, the engineer on top, and the appellee

working, as ordered, beneath—the engine moved forward and cut off one of the appellee's legs, and that motion being reversed by the engineer, the other leg, also, was cut off.

For that irreparable loss, dooming him to hopeless poverty and dependence, the appellee sued the appellant for tort, and recovered a judgment for $5,000 damages, as assessed by the jury.

The appellant denies that its engineer was guilty of culpable negligence, and insists, also, that, as he was competent and trustworthy, it is not responsible to his *co-employee* for his negligence, however gross.

The circuit court instructed the jury, that, if they believed that the accident resulted from the *gross* negligence of the engineer, the appellant was liable for it in this action.

After full and careful consideration, we are satisfied that the engineer was guilty of some negligence. The degree of it was a question of fact which, on such apparently conflicting testimony, the jury had a right to decide, and, whatever deduction may be most logical and consistent, we are also satisfied that the circumstances, as detailed by all the witnesses, authorized the jury to find that his negligence was "*gross*," an elaborate analysis of all the facts would not, therefore, be either useful or pertinent in this opinion.

But the appellant assumes that the appellee's own fault contributed to the catastrophe, and it thereupon insists that the co-operation of even the gross negligence of the engineer will not sustain the action. The assumption is not sufficiently maintained, nor is the conclusion from it altogether unexceptionable or true.

The engineer does testify that he directed the appellee and his associate in the work to "block" the wheels, and says that such a precaution would have prevented the accident; but others, who heard all that was said, and saw all that was done on that occasion, do not corroborate, but, by strong implication, negative his statement of that fact, rather discredited by the incredible omission, and by his failure to see that danger, so imminent in his opinion, was not averted by a security so obvious to him and so easy to them; and his

credibility is also impaired by his interest and zeal, and his conduct in hiding himself and abandoning his post in the appellant's service, almost immediately after the infliction of the injury on the appellee; and not only may we presume that the appellee, a young and unskilled laborer, was ignorant of the utility of scotching, but feel sure that the engineer either did not advise or direct it, or was guilty of gross negligence in placing him in so much peril under the engine without seeing that its stationary attitude was first secured by blocking, and also in using no means of keeping down the steam or preventing its accumulation, although the appellee was kept under the locomotive more than an hour—the steam increasing and the wheels unscotched all the time.

But, had the appellee been guilty of negligence, nevertheless, the injury might have been avoided by the proper care of the engineer, and is, therefore, attributable to his gross negligence. In such a case, both principle and preponderating authority seem to decide that such a remediable fault of the person injured should not exonerate the wrong-doer from legal liability for the damage, which, without gross negligence, he could have prevented, and was as much bound by law to prevent in that as he would have been in any other case.

In running its locomotive and its passenger and burthen cars, a railway corporation is required by law to observe, at least, ordinary care, vigilance, and skill, so far as strangers may be affected by the employment of a motive power so tremendous and destructive as unregulated or carelessly or unskillfully regulated steam; and, as in every class of cases of bailment or trust, the requisite care is proportioned to the danger of neglect and the difficulty of conservative management; ordinary care in many classes of cases might be ordinary neglect, and ordinary neglect might be gross neglect in steam operations on a railway. In all those operations, the invisible corporation, though never actually, is yet always constructively, present through its acting agents, who represent it, and whose acts, within their representative spheres, are *its* acts. Had the appellee been a stranger, the appellant

would, therefore, have been certainly suable and responsible in this action, and we cannot admit that the appellee's relation as an employee in its service, should exempt the corporation from that general liability, as it might, perhaps, do by the application of a recent rule adjudged in England with some exceptions, and echoed, with still more exceptions, by a few American courts. But this anomalous rule, even as sometimes qualified, is, in our opinion, inconsistent with principle, analogy, and public policy, and is unsupported by any good or consistent reason. In the use and control of the engine, the engineer is the chief and governing agent of the corporation, and all his associates *in that employment* are employees in "*a common service.*" Neither of these subordinates under his control is, *as between themselves*, an agent of the railway company; and, therefore, *it* is not responsible for any damage done by one of them to another while in its service; and, so far, the British rule has foundation in both reason and analogy; but beyond this, it is baseless of any other support than a falsely assumed public policy or implied contract. In the employment and control of his subordinates, the engineer acts as the representative agent of the common superior—the corporation. They have no authority to control or resist him in his alloted sphere of service; and why, then, should the law imply a contract to trust him alone, and never look to the corporation, as his employer and constituent, for indemnity for damage resulting from his willful wrongs or grossly negligent omissions? When they engaged to serve under him, perhaps, they knew nothing of his trustworthiness or his credit; but they knew that they would serve a corporation, and probably faith in *its* responsibility and protection induced them to venture into its service; and this faith may be presumed to include an assurance of safety as well as of pay. Perhaps, if they had understood that the corporation would not be responsible for the conduct of its engineer, they would never have risked such service under him. The contract implied, by law, would, therefore, rather seem to be that the subordinates should look to the corporation, and not to its

agent alone, for indemnity for loss arising to them from his unskillfulness or culpable negligence.

Nor can we perceive how public policy could be subserved by the irresponsibility of the corporation in such a case. Such exemption, if known, might possibly stimulate the subordinates to a more vigilant observance of the engineer's conduct; but why should they be left to depend on that which could be of little, if any, avail to prevent the unskillfulness or negligence of a superior above their dictation or control?

In undertaking the perilous service, they might be presumed to risk the hazards necessarily incident to their employment; and, as they could not expect infallibility in the management of the locomotive and its running train, and, as they knew that the most faithful and skillful managers may occasionally lapse into common blunders and *ordinary* negligence, the law might imply an agreement to risk their possible occurrence. But the corporation, being under an implied obligation to provide sound and safe cars and engines, and a competent and faithful engineer, his subordinates cannot reasonably be presumed to expect or to hazard his gross negligence, which borders on fraud and crime; and it seems to us, therefore, that, while the corporation may not be responsible to them for his ordinary negligence, both justice and policy require that it should be held liable for his gross negligence as its chief and controlling agent in the management of its running train. Assurance of protection to this extent not only appears just and reasonable, but, by inspiring more confidence, would enable the corporation to obtain and keep better employees, and at cheaper rates. This doctrine, therefore, instead of its converse, seems to be suggested by reason and commended by policy. But, in this respect, employees, like the appellee, in a distinct and altogether different department of service, stand in an essentially different category.

In their employment, having nothing to do with the cars or the running of them, they, like the corporation's mere woodchoppers, are comparative strangers to the engineer and his running operations, and seem to be entitled to all the security of strangers. They may be presumed to know no more than

strangers about the skill or care of the engineer, nor have they any more control over him or connection with his running arrangements or operations.   They are, therefore, not, in the essential sense of contradistinctive classification, "*in the same service*" with the engineer and his running co-operators, who act in a different sphere and constitute a distinct class; consequently, neither of the assumed reasons for the British rule as to employees "in the *same* service" can be, in any way, consistently applied as between the engineer and such common laborers as the appellee; and the apparent extension of the rule to them may be deemed inadvertent, or not carefully and logically considered with rational discrimination and precision.   We therefore can neither feel the *rationale*, nor acknowledge the authority of the crude and self-contradictory decisions, or loose and incongruous *dicta*, referred to on that subject; but, to harmonize the law, we must recognize a more congenial principle of normal vitality, and adjudge, as we now do, that the appellee, in his humble and isolated employment, should be treated as a stranger to the engine as a motive power, and if without fault himself, might, like other strangers, recover from the railway corporation for a loss arising from the ordinary negligence of its engineer; but, as the jury might possibly have found that he himself had been negligent, the circuit court was right in requiring proof of gross negligence by the engineer, which, in that contingency, would have been necessary to the liability of the appellant.

The only consistent or maintainable principle of the corporation's responsibility is that of agency.   "*Qui facit per alium facit per se.*"   It is therefore responsible for the negligence or unskillfulness of its engineer, as its controlling agent in the management of its locomotives and running cars, and that responsibility is graduated by the classes of persons injured by the engineer's neglect or want of skill—as to strangers, ordinary negligence is sufficient—as to subordinate employees, associated with the engineer in conducting the cars, the negligence must be gross—but as to employees in a different department of service, unconnected with the running operations, ordinary negligence may be sufficient.   Among common

laborers, constituting a distinct class, all standing on the same platform of equality and power, and engaged in a merely incidental, but independent service, no one of them, *as between himself and his co-equals*, is the corporation's agent; and therefore *it* is not, on the principle of agency or otherwise, responsible for damage to one of them resulting from the act or omission of another of them, although each of the company's employees would be its agent as to entire strangers to it.

This is the only doctrine we can recognize as consistent with the enlightened and homogeneous jurisprudence of this clearer day of its ripening maturity; and, looking through the mist of the adjudged cases and elementary *dicta*, we can see no other fundamental principle which can mould them into a consistent or abiding form.   That principle is the only safe clue to lead the bewildered explorer to the light which shows the sure way of right, and proves the true doctrine of American law.

We feel authorized to conclude that the appellant was legally liable to the appellee for the injury done to him by the gross negligence of its engineer; that the court, on the trial, gave to the jury the true, and only true law; and that the verdict was authorized by both the law and the facts; and we would overstep the judicial line by interfering with such a verdict in such a case, on the ground of alleged exorbitance, indicating neither passion, partiality, nor prejudice.

Wherefore, the judgment is affirmed.