CASE 29—ACTION BY WM. S. LOWE AGAINST THE L. & N. R. R. CO. FOR PERSONAL INJURIES.—MAY 13.

# Louisville & Nashville R. R. Co. v. Lowe.

APPEAL FROM WASHINGTON CIRCUIT COURT—J. P. THOMPSON, SPECIAL JUDGE.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

MASTER AND SERVANT—RAILROAD EMPLOYES—DUTY OF RAILROAD—LOOKOUT—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE—FELLOW SERVANTS—EXCESSIVE DAMAGE.

1. Where a railroad employed nearly two hundred men at a junction, including plaintiff, who was employed as an assistant car inspector, and as such was required, to, and did, go on defendant's tracks in the performance of his duties, defendant owed him the duty to keep a lookout on an engine backing down upon him from the rear while plaintiff was passing along the track to a tool

house after having inspected a train, in order to prevent injuring him.

2. Defendant was liable notwithstanding plaintiff's negligence, if after it discovered plaintiff's negligence, it could have prevented the injury by the exercise of ordinary care.

3. A car inspector at a railroad junction and the hostler of a switch engine, through whose negligence he was injured, were not fellow servants.

4. Where the only permanent injury to a railroad car inspector, thirty-four years of age, was the loss of one arm, a verdict in favor of plaintiff for $13,000 was grossly excessive.

W. C. McCHORD, WALKER D. HINES, BENJ. D. WARFIELD, H. W. BRUCE AND E. W. HINES, ATTORNEYS FOR APPELLANT.

The points complained of and relied on for reversal are as follows:

1. The trial court should have given peremptory instructions to the jury to find for the defendant, because on the uncontradicted facts proven appellee was guilty of such negligence, but for which the accident would not have happened.

2. The peremptory instruction should have been given for the further reason that if there was any negligence on the part of the person running the engine that injured appellee, it was the negligence of his fellow servant for which appellant is not answerable. The master is not liable for the negligence of one fellow servant resulting in injury to another fellow servant, even though that negligence was gross.

3. Instruction "A" given by the court to the jury is erroneous in that it assumes that appellee was on the track at the time and place he was injured, in the performance of his duty, which is not true. It is also erroneous in its attempt to define the measure of damages. It is also erroneous in that it assumes that there was evidence that appellee's peril was discovered in time, by the use of reasonable diligence and care to have avoided the injury. It was also vitally erroneous in that it authorizes a recovery for the ordinary negligence of those running the switch engine.

4. Instruction "B" is erroneous in that it abolishes the doctrine of contributory negligence. Clearly it was as much the duty of appellee to keep a lookout for his own safety, as it was for the person handling the engine to keep a lookout for him.

5. Both instructions "A" and "B" are erroneous in that they altogether leave out of view the ordinary risks incident to the employment, which appellee took in entering and remaining in the service.

Louisville & Nashville R. R. Co. v. Lowe.

6. A verdict for $13,000 for the loss of an arm of a person of very limited earning capacity is grossly excessive.

## AUTHORITIES CITED.

Shearman & Redfield on Negligence, Secs. 25, 26-235 (5th Ed.); Cooley on Torts, 674; Elliott on Railroads, sec. 1702; Paducah & Memphis R. R. v. Hoehl, 12 Bush, 41; Illinois Central Ry. v. Dick, 91 Ky., 441; L. & N. R. R. Co. v. McCoy, 81 Ky., 415; Kentucky Central R. R. v. Thomas, 79 Ky., 163; Favre v. L. & N. R. R. Co., 91 Ky., 545; Hughes v. Cincinnati, &c., R. R., 91 Ky., 531; Johnson's Adm'r v. L. & N. R. R. Co., 91 Ky., 65; Cahill v. Cincinnati, &c. Ry., 92 Ky., 349; Voltz. v. C. & O. R. R., 95 Ky., 189; L. & N. R. R. Co. v. Wolf, 80 Ky., 850; L. & N. R. R. Co. v. Schmetzer, 94 Ky., 432; Louisville, &c., R. R. v. Goetz, 79 Ky., 447; Bogenshutz v. Smith, 84 K Ky., 338; Hughes v. Cincinnati, &c., R. R., 91 Ky., 531; L. & N. R. R. Co., v. Brantley, 96 Ky., 310; L. & N. R. R. Co. v. Crawley, 21 Ky. Law Rep., 1437; Gunn &c., v. Felton, Receiver, &c., 22 Ky. Law Rep., 268; Decision of January 10, 1901, Sandy, &c., Co. v. Caudill, 22 Ky. Law Rep; Clark's Adm'r v. L. & N. R. R. Co., 18 Ky. Law Rep., 1082; Gatewood v. McHenry Coal Co., 14 Ky. Law Rep., 336; Wagner v. Wetmore, 12 Ky. Law Rep., 638; Kentucky Cent. R. R. v. Lebus, 14 Bush, 522; Ramsey v. Louisville, Cin., &c., Ry. Co., 89 Ky., 102; Newport News, &c., Co. v. Deuser, 97 Ky., 96; L. & N. R. R. Co. v. Webb, 99 Ky., 343; Avery v. Meek, 96 Ky., 102; Cincinnati, &c., Ry. Co. v. Palmer, 98 Ky., 384; Wright v. Cincinnati Southern Ry. Co., 94 Ky., 117; Priestly v. Fowler, 3 Mees. & W., 1; Farwell v. Boston, &c., Ry., 4 Met. (Mass.), 49; L. & N. R. R. Co. v. Collins' Adm'r, 2 Duvall, 120; L. & N. R. R. Co. v. Cravens' Adm'r, 9 Bush, 565; Illinois Central Ry. v. Hillard, 560, 99 Ky.; Randall v. Baltimore & Ohio R. R. Co., 109 Supreme Court, U. S. Law Ed., 1004-5; Quebec Steamship Company v. Merchant, 133 Supreme Court, U. S. Law Ed., 656; Parker v. Hannibal, &c. Ry. Co., 18 L. R. A., 802; Chicago, &c. Ry. Co. v. Moranda, 108 Ill., 576; Appeals, Chicago, &c. Ry. Co. v. O'Bryan, 15 Ill., 134; Illinois Cent. Ry. Co. v. Coleman, 22 Ky. Law Rep., 878.

## ADDITIONAL REFERENCES.

Aerkfetz v. Humphreys, 145 U. S., 418; 3 Elliott on Railroads, Sec. 1253; Kansas City & R. Co. v. Cook, 28 L. R. A. , 181; Wabash R. R. Co. v. Skiles, 21 Am. & Eng. R. R. Cases, 881; L. & N. v. Cundiff, Adm'r., 90 Ky., 560; Ill. Cent. v. Dick, 91 Ky., 434;

Louisville & Nashville R. R. Co. v. Lowe.

L. & N. v. Robertson, 9 Heisk., 276; Elliott v. R. R., 150 U. S., 145.

J. W. S. CLEMENTS AND I. H. THURMAN, ATTORNEYS FOR APPELLEE.

1. We submit that a railroad company has the exclusive use of its track for the purposes of its business, but at such places as the public is in the habit of using its track either by right or license, it has the right to its exclusive use only upon condition that its servants in charge use signals, and keep a vigilant lookout to discover persons on the track in time to warn them of their danger, especially at a junction where the public are invited and where employes bind themselves under their contract of employment to go and perform their duties.

2. The real issue submitted to the jury in this case was: Could the train men have prevented the accident by a reasonable performance of their duty? If they could the law is for the appellee, otherwise it is for appellant.

3. Appellee, as a car inspector, had nothing to do with the running operation of the road, and was not in any sense of the word a fellow servant of those in charge of the engine, and tender that ran over him, but in a wholly and entirely different line of service.

4. A railroad company is under an implied obligation to provide safe and sound cars and engines, and a competent and vigilant enginer, can not reasonably be responsible for the negligence or unskillfulness of its engineer, as its controlling agent in the management of its locomotives, is graduated by the classes of persons injured by such neglect or want of skill, and as to employes in a different department of service, ordinary negligence is sufficient to hold the company responsible.

5. It is the universal rule of the court, and it is the law as defined in our Code, not to disturb a verdict as excessive, unless there is something to indicate passion or prejudice. The jury, being the constitutional triers, must fix the damages.

6. In this case we insist that the jury were properly instructed, the trial was fair, and the compensatory damages awarded appellee, considering the pain of body and mind that he endured and must continue to endure, and his practically total disability to earn a livelihood, is in no sense excessive.

### LIST OF AUTHORITIES CITED.

L. & N. R. R. Co. v. Howard's Adm'r, 82 Ky., 219; Shelby's Adm'r v. C. N. O. & T. P. R. R. Co., 85 Ky., 227; L. & N. R. R. Co.

v. Schuster, by etc., 102 L. R., 67; Ky. C. R. R. Co. v. Smith, etc., 93 Ky., 453; L. & N. R. R. Co. v. Potts' Adm'r., 13 Ky. Law Rep., 335; L. & N. R. R. Co. v. Popp, by, &c., 96 Ky., 109; Connelley's Adm'r v. C. N. O. & T. P. R. R. Co., 89 Ky., 406; P. & M. R. R. Co. v. Hoehl, 12 Bush, 48; Spencer v. I. C. R. R. Co., 29 Iowa, 60; P. & T. R. R. Co., v. Hagan, 47 Penn., 246; L. & N. R. Co., v. Earle's etc., 29 Ky., 374; L. & N. R. R. Co. v. McCoy; L. & N. R. R. Co. v. Krew, 16 Ky. Law Rep.; C. & P. R. R. Co. v. Kuhn, 86 Ky., 578, 584; L. C. & L. R. R. Co. v. Goetz, 79 Ky., 442; Crawley v. L. & N. R. R. Co., 21 Ky. Law Rep., 1435; Gunn v. Felton, etc., 22 Ky. Law Rep., 268; Ericson v. Railway Co., 41 Minn., 500; W. R. Co. v. McDaniels, 107 U. S., 454; L. & N. R. R. Co. v. Collins, 2 Duvall, 118; Greer v. L. & N. R. R. Co., 89 Ky., 179; I. C. R. Co. v. Hillard, 99 Ky., 688; Ky. C. R. Co. v. Rylye, 13 R., 862; Ky. C. R. Co. v. Aackley, 87 Ky., 282; L. C. & L. R. R. Co. v. Cravens, 9 Bush, 561; L. & N. R. R. Co. v. Moore, 83 Ky., 683; 83 Ky., 839; 88 Ky., 399; 91 Ky., 41; 16 R., 500; 79 Ky., 446; 21 R., 1618; S. R. Co. v. Barr, 21 R., 1618; C. & O. R. R. Co. v. Perkins; I. C. R. R. Co. v. Mizel; C. R. R. Co. v. Palmer, 98 Ky., 391; N. M. & M. R. Co. v. Denteel, 91 Ky., 49; Promer v. Milwaukee R. R. Co., 90 Wis., 215; Swift v. Short, 92 Fed. R., 567; Mast v. Kern, 75 Am. St. Rep., 600; Dwyer v. Am. Ex. Co., 82 Wis., 307; Barb. Dig., vol. 3, 426; L. & N. R. R. Co. v. Mitchell, 87 Ky., 327; C. & O. R. R. Co. v. Davis, 22 R., 748; City of Louisville v. Garr, 99 Ky., 583; C. & N. W. R. Co. v. Jackson; Caldwell v. N. J. S. Co., 56 Barb., 426; Walker v. E. R. W. Co.,63 Barb, 206; Boyce v. C. S. Co., 35 Cal., 460; Shaw v. B. W. R. R. Co., 8 Gray, 45; Choppin v. N. O. C. R. R. Co., 17 La., 19; Barksdale v. Same, 23 La., 180; Chicago & Co., etc. v. Fisher, 30 Ill. App., 33; 50 N. W. 92; Smith v. Whittier, 30 Pac. R., 529; 15 N. Y. S., 864; 35 Minn., 73; 32 N. Y. Sup., 915; 87 Wis., 257; 131 N. Y., 576; N. & O. & St. L. R. Co. v. Dudgeon, 83 Ill. App., 528; I. H. & I. C. v. Shuck, 56 Nev., 434; B. & A. R. Co. v. Hausman, 548 S. W. R., 841; L. S. R. v. Tarbiff, O. Ct. R.,709; Williamson v. Brok, H. R. Co., 65 N. Y. S., 1054, App. Div., 399; Rennee v. U. S. Leather Co., 83 N. W. Y., 473; 57 S. W. R., 912; 82 N. W. Y., 297; I. C. R. Co. v. Sonders, 79 Ill. App., 41; 79 Ill., App., 632; 33 Ill. App., 450; 13 Wash., 325; 50 Wis., 419; 37 S. W. R., 829; 7 N. Y. S., 900; 14 N. Y. S., 336; 79 N. Y. S., 1043; 50 S. W. R., 894; 149 Mo., 609; 48 N. Y. S., 640; 9 Mont., 108; 9 N. Y. S., 506.

Opinion of the court by JUDGE HOBSON—Reversing.

Appellee, William S. Lowe, was in the service of appellant, the Louisville & Nashville Railroad Company, as as-

sistant inspector of trains at Lebanon Junction, which is a
town of about 1,200 inhabitants, at the junction of the
Knoxville branch with the main line of appellant's road.
There is maintained at this place a railroad yard, contain-
ing an extensive system of side tracks, used in making up
freight trains going out of the yards. The regular trains,
too, pass over the main tracks, and are sometimes switched
on the side tracks, so that cars are moving about the yard
pretty much all the time. A switch engine is kept in the
yard for the purpose of switching cars and making up
trains. Large coal bins are maintained there by the ap-
pellant, at which all engines are supplied with coal. Per-
haps as many as 150 engines, including the different pas-
sages of the switch engine, pass across the yard every day. The
coal bins are north of the station, and in a curve of the
track, so that an engine beyond a certain point can not be
seen south of the bins. Appellee had been the watchman
in the shops for about six weeks before he was made as-
sistant car inspector. On the 12th of September, 1899,
which was the first day that he served as car inspector, he
went on duty at six p. m., and inspected a freight train
then ready to go out southward on the Knoxville branch.
The train was standing on a side track east of the main
track, fronting south. He began at the engine on the west
side of the train, and inspected the cars, going back from
one to another until the inspection was finished, when the
train pulled out. The toolhouse to which he was then to
go was on the east side of the tracks, and south of the point
where he then was. So he walked southward along by the
side of the departing train, and, when the side track merged
in the track next west of it, he got over on that track, and
then on the main track. While he was walking southward
on the main track, an engine and tender backing down on

that track ran upon him in the rear, knocking him down, cutting off his right arm, and inflicting severe bruises, for which injuries he recovered damages in the sum of $13,000. The evidence introduced by him on the trial tended to show these facts: The track was straight for some distance, and appellee, walking along with his back to the engine, could have been seen by the persons on it for some distance if a proper lookout had been kept. The tender had been loaded with coal at the coal bin. The coal was piled up higher than the engineer's head, so that his line of vision did not reach the track, but rose above the track the further it was prolonged, and he was therefore unable to see anything on the track in front of him. A passenger train from the south was just about due on the main track, and appellee supposed that no other train would be on that track. So he kept a lookout in front of him for it, but did not look behind him after he started south. When he turned and started south, he looked back, and, seeing nothing, supposed the way was clear. The engine by which he was hurt was then standing at the coal bin around the curve. After taking coal, it came rather rapidly southward, in order to get off the main track before the arrival of the passenger train from the south. Appellee's proof tended to show that no signal was given of the movements of this engine, and that it was run substantially without any lookout in front of it. The proof is conflicting as to whether signals were given by the ringing of the bell, and as to the speed of the train, but the evidence for appellee shows that the engine was running at something like twelve or fifteen miles an hour. When it stopped after running over appellee, it was just even with the engine of the outgoing freight train, by the side of which he had been walking, and had therefore run something like a quarter of a mile more than that engine after it started and appellee

turned and began to walk south. When it stopped it had only one minute to get in on the side track in time, according to appellant's proof. Appellee could not go directly to the toolhouse, because the outgoing freight train was between him and it. He perhaps got on the main track, thinking no other train, except the passenger train from the south, could properly be on that track at that time, and this would be in front of him. There is some evidence from which it is argued that the time had already expired when any other train, under the rules, might properly use the main track. The men in charge of the engine did not see appellee at all, and did not know he was hurt until informed by others.

Appellant complains that the court refused to instruct the jury peremptorily to find for it. It also complains of the instructions given by the court. The court, in substance, instructed the jury that if they believed from the evidence that appellee, at the time he received the injuries, was upon appellant's track in the usual course of his employment, and that its agents in charge of the engine and tender that injured him negligently failed to ring the bell or give other signal of its approach, or negligently failed to stop it after they saw his peril, or after they might have seen it by the use of reasonable care, then they should find for the plaintiff, unless they believed from the evidence that he by his own negligence contributed to such an extent to the injury that but for his negligence it would not have happened, and that in this event he could not recover, unless appellant's agents in charge of the engine and tender knew, or could have known by ordinary attention, of the peril in which his negligence had placed him, and thereafter failed to observe reasonable care to avoid the injury which followed.

It is earnestly maintained for appellant that the evidence shows no negligence on its part; that, as to appellee, it was

not required to give notice of the movement of its trains, or keep a lookout for him in moving them. In support of this view, we are referred to a number of decisions in other jurisdictions; but, without discussing them, we conclude that the rule has been so often held otherwise 'in this State, that it is no longer an open question.

Appellant has at Lebanon Junction something like 200 employes. · The place, at which appellee was injured is used by them and by other persons, to a great extent, in coming and going. The proof presents a case where the presence of persons on the track should reasonably be anticipated by those in charge of the train. The point was not far from the station—between it and the coal bins—and where a great many people passed back and forth, especially during the day. In Shelby's Adm'r v. Cincinnati, etc., Railroad, 85 Ky., 224, 8 R., 928, 3 S. W., 157, the intestate was in the yard of the railroad at Junction City for the purpose of soliciting employment in watering stock, and was run over by a train backed without signal or outlook. The place was not so much traveled as in the case before us, and the intestate was barely a licensee, and yet the court held the company liable. After showing that increased vigilance and precaution are required, the court said: "But it is obvious that neither the duty of giving the warning of the approach of trains, nor of resorting to the proper and necessary means to prevent collision with persons, can be performed unless there be some one in a position to see ahead of the train and to control it."

In Conley's Adm'r v. Cincinnati, etc., Railroad, 89 Ky., 402, 11 R., 602, 12 S. W., 764, the intestate was killed in like manner by a backing train as he was crossing the track, and the case is discussed on the idea that he was technically a trespasser. The court held the company liable, and said:

"A train of running cars—these were running, according to the appellant's proof, at the rate of about fifteen miles per hour—is more dangerous to the life of persons with whom it comes in contact than that of the most ferocious and powerful wild animal. And certainly it can not be lawfully turned loose to run by itself, and expose persons that may be on the track, either by accident, mistake, or design, to its destructiveness. Humanity positively forbids the owner of property that is dangerous to human life and safety to knowingly turn such property loose, even upon his own ground, where it will do mischief even to a technical trespasser." In L. & N. Railroad v. Potts, 92 Ky., 30, 13 R., 344, 17 S. W., 185, the deceased was in the employ of the railroad company at Junction City, a town of about 400 people. It was his duty to enter in a book the numbers of the cars standing on the side tracks and point out to the engineer those he was to take up. While standing on one of the tracks, he was run over and killed by some cars detached from the engine moving up behind him without any lookout or signal of their approach. The court said: "The Shelby case, *supra*, which occurred in the same town, and the Conley case, *supra*, seem conclusive of the question. It was held on those cases that neither a train nor a single car should be permitted to move on a side track in a city or town, without some servant is in position to give warning of its approach, and to control its movements. . . . It was as essential that the servant should be in a position thus to see and give warning, as he was to be in a position to control the cars." In Barber v. Cincinnati, etc., Railroad, 14 Ky. Law Rep., 869, 21 S. W., 340, the intestate was in the service of the railroad company, getting out ballast, near High Bridge, Ky. The quarry was on the west side of the track, and, to obtain a suitable place for piling the

rock, he had to wheel it across the track and along by the side of it a short distance, to a point on the east side, and for that purpose was required to place plank across the track on which to run his wheelbarrow. Warning sig- nals by the train to laborers working on the road were required by the rules of the company. But no signal was given of the approach of the train, and when it was very close to the intestate he ran to the track, and tried to move the plank to avoid danger of the train's being derailed. In doing this, he was killed. The men in charge of the train knew of the labor done at this point, and the mode of doing it. The trial court gave a peremptory instruction to the jury to find for the defendant, but on appeal this was reversed. In the subsequent case of Illinois Central Railroad Co. v. Mahan, 17 Ky. Law Rep., 1200, 34 S. W., 16, Mahan was the telegraph operator at Arlington, and received orders to stop an extra train. It disregarded his signal to stop, and he, seeing that a collision was inevitable with a pas- senger train coming in the opposite direction, unless the order to stop was obeyed, seized a lantern and followed the train some thirty yards, waving his light. It stopped, and conductor came back to him. The extra then backed in off the main track to get out of the way of the approaching passenger train, and they also got off the main track to let that train pass. In doing this they got on the side track and while standing there the train which he had stopped continued backing down on the side track without any lookout or signal of its approach, and ran over him. Judg- ment in his favor was affirmed. The court said: "If, in the emergency which seemed to confront him, the appellee got on the side track, or too close to it, when there was space elsewhere within reach to stand or walk and give his signals to the approaching passenger train, he was perhaps guilty

Louisville & Nashville R. R. Co. v. Lowe.

of negligence, but for which the injury would not have oc-
curred, yet it is manifest that, by the exercise of ordinary
care on the part of those controlling the backing train, the
danger could have been discovered, and the injury averted.
By witnesses in the service of the appellant it is shown to
have been the duty of those operating the extra to have
had a brakeman on the rear of the backing train, who might
give warning of its comparatively noiseless approach; and it
is no excuse for the failure to make such provision in this
instance to say that the company was using, instead of the
usual caboose, a box car, which did not conveniently admit
of this customary precaution. The necessary care was not
exercised on this occasion, and the failure to exercise it was
gross negligence."

These cases control the one before us, for the danger from
the want of signals of the approach of the train, or outlook
in front of it, was greater in this case than in any of them,
under the evidence. The same rule has been announced else-
where. Thus in 2 Thompson on Negligence, section 1839, it is
said: "Persons lawfully at work in repairing a railway track,
or in repairing a highway where it crosses a railway track,
can not be expected to pursue their labors, and at the same
time maintain a constant lookout for an approaching train.
They are passive, and are not a source of danger to the
train. Those who are driving the train are active, and are
handling and are in control of the instrument of danger
and mischief. The obligation or reasonable care which the
law puts upon the railway company under these circum-
stances therefore demands nothing less than an active vigil-
ance in favor of persons thus lawfully at work upon the track,
and the giving of seasonable danger signals to arouse their
attention and enable them to get out of the way before it
is too late."

In sections 1840-1842 it is shown that the same rule applies in favor of the servants of a contractor, or persons engaged in loading or unloading cars, or receiving mail or express matter. In section 1846 the care required in moving trains through cities and towns is pointed out, and it is laid down to be negligence, when a train is moved backwards, not to have a person keeping a lookout. See, also, 2 Shearman & Redfield on Negligence, sections 457, 458. The case of Illinois Central Railroad v. Dick, 91 Ky., 434, 11 R., 861, 12 R., 772, 15 S. W., 665, is not inconsistent with the above. In that case Dick was only a licensee to cross the track. For his own convenience he left the usual way of crossing, and was walking along the track. He had no right to be where he was. At least, there is nothing in the case to show that his presence there should have been anticipated, or that it was a place at which the servants of the company should have been on the outlook for persons. The appellee was in the discharge of his duties in going from the inspection of the train to the toolhouse and was at a place at which the presence of persons on the track might be anticipated. While he was not at work on the track, he was at work for the defendant, and was lawfully on the track in the course of his employment, and is as much within the principle of the rule as if laboring on the track. Whether he was guilty of contributory negligence was a question for the jury.

It is earnestly insisted, also, that the court erred in instructing the jury that appellee could not recover if but for his negligence the injury would not have happened, unless appellant's agents in charge of the engine and tender knew, or could by ordinary care have known, of the peril in which his negligence had placed him, and thereafter failed to observe reasonable care to avoid the injury which ensued.

The instruction of the court followed the rule announced in an opinion by Judge Crenshaw, in the year 1856, in L. & N. R. R. C., v. Yandell, 17 B. Mon., 598. It was reaffirmed in an opinion by Judge Robinson in L. & N. R. R. Co. v. Collins, 2 Duv., 114, 8 Am. Dec., 486, and L. & N. R. R. Co. v. Robinson, 4 Bush, 507. These cases have since been followed by the court so often that the question is no longer open. L. & N. R. R. Co. v. McCoy, 81 Ky., 411, 5 R., 397; L. & N. R. R. Co. v. Earl, 94 Ky., 374, 15 R, 384, 22 S. W., 607; Cahill v. R. R. Co., 92 Ky., 345, 13 R., 714, 18 S. W., 2; L. & N. R. R. Co. v. Schuster, 10 Ky. Law Rep., 65, 7 S. W., 874; L. & N. R. R. Co. v. Krey, 16 Ky. Law Rep., 797, 29 S. W., 869; L. & N. R. R. Co. v. Hackman, 17 Ky. Law Rep., 81, 30 S. W., 407; R. R. Co. v. Lewis, 18 Ky. Law Rep., 957, 38 S. W., 482; Crawley v. R. R. Co, 21 Ky. Law Rep., 1435, 55 S. W., 434; Flynn v. Ry. Co., 110 Ky., 662, 63 S. W., 490; Gunn v. Felton, Receiver, 108 Ky., 565, 57 S. W., 15. To the same effect, see 1 Thompson on Negligence, secs. 230-232; Inland, etc., Co. v. Tolson, 139 U. S., 551, 11 Sup. Ct., 653, 35 L. Ed., 270; Grand Trunk Railway v. Ives, 144 U. S., 408, 12 Sup. Ct., 679, 36 L. Ed., 485.

In towns and cities where the presence of persons on the track of the railroad may be rightfully anticipated, a due regard for human life requires that a lookout should be maintained in the operation of engines and trains. This has been often declared. The place where the injury sued for occurred was in a town, and at a place which was used not only by the numerous employes of appellant, but by other persons, in passing from the station to the coalyards, and from one portion of the town to another. The presence of persons on or about the track at the point where the injury occurred

should reasonably have been anticiapted, and it was incumbent on those operating the engine in question to keep a lookout. Otherwise all the care would be required of those on the track, and none would be required of those operating the train. Instructions embodying the view of the law insisted on for appellant have been held erroneous by this court as to persons rightfully on the track at such places, on the ground that they placed all the care on the person injured. L. C. & L. R. R. v. Goetz's Admr., 79 Ky., 442, 3 R., 221, 42 Am. Rep., 227; L. & N. R. R. Co. v. Clark's Admr., 105 Ky., 571, 20 R., 1375, 49 S. W., 323. In view of the character of the place where the accident occurred, and the fact that the deceased was not a trespasser, the court properly qualified the instruction on contributory negligence as indicated.

It is further urged that appellee and the men in charge of the engine were fellow servants, being all engaged in the operations of the yard, and that, at any rate, appellant is not liable, except for the gross negligence of its man in charge of the engine. The engine was run from the coal bin to the side track by a man employed for that purpose to take charge of the engines in the yard, and known as the "hostler." There is much conflict in the authorities as to who are fellow servants, but the rule in this State has been steadily maintained from the beginning. In L. & N. Railroad Co. v. Collins, 63 Ky., 114, 87 Am. Dec., 486—the first case on the subject— where a laborer on an engine in the yard was injured by the negligence of the man in charge of the engine, this court said: "The only consistent or maintainable principle of the corporation's responsibility is that of agency: 'Qui facit per alium facit per se.' It is therefore responsible for the negligence or unskillfulness of its engineer, as its controlling agent in the management of its locomotives and running cars, and that responsibility is graduated by the classes of persons in-

jured by the engineer's neglect or want of skill. As to
strangers, ordinary negligence is sufficient; as to subordinate
employes associated with the engineer in conducting the cars,
the negligence must be gross; but as to employes in a differ-
ent department of service, unconnected with the running op-
erations, ordinary negligence may be sufficient. Among com-
mon laborers, constituting a distinct class, all standing on
the same platform of equality and power, and engaged in a
merely incidental, but independent, service, no one of them,
as between himself and his coequals, is the corporation's
agent; and therefore it is not, on the principle of agency or
otherwise, responsible for damage to one of them resulting
from the act or omission of another of them, although each
of the company's employes would be its agent as to entire
strangers to it." This case, and a number of others follow-
ing it, were reviewed and approved in L., C. & L. Railroad
Co. v. Cavens, 72 Ky., 559, and still later in Greer v. L. &
N. Railroad Co., 94 Ky., 169, 14 R., 876, 21 S. W., 649, 42 Am.
St. Rep., 345, and Illinois Central Railroad Co. v. Hilliard,
99 Ky., 684, 18 R., 505, 37 S. W., 75. In the last case the
conductor of a train was injured by the negligence of a car
inspector, and it was insisted that the jury should have been
instructed that they were fellow servants, or that the com-
pany was at least liable only for the gross negligence of the
car inspector. The court held otherwise, and said: "In the
first place, the person employed at Mound Station to inspect
each car of a train, and ascertain if it is in a safe condition,
was not a fellow servant of plaintiff, in the sense of being
upon a common footing, and agents of each other. They acted
in different spheres, and neither could or was required to
know whether the other was properly doing his duty. In the
second place, it would have been improper to require the jury
to believe the inspector was guilty of gross negligence. The

simple inquiry was, as they had been instructed, whether the company, through its inspector, used ordinary care in examining the cars, so as to ascertain whether the ladders attached to each were in a safe condition, for it was the legal duty of the company to guard against every source of danger they could, by the exercise of that kind and degree of care, foresee and prevent; and, while a railroad company can not be required to insure the safety of a train, it is bound to make a reasonable, proper, and careful examination of each car." In L. & N. Railroad Co. v. Davis, 14 Ky. Law Rep. 716, a switch engineer in a railroad yard was held not to be a fellow servant of a switchman and coupler in the yard. In L. & N. Railroad Co. v. Moore, 83 Ky., 675, 7 R., 646, a fireman while acting as engineer, was held to be engineer for the time, and not to be a fellow servant of the brakeman. The same rule has been applied as between the crews of different trains, and it seems to us to be a very unsubstantial distinction between the engineer who runs an engine in the yard, and one who runs it at other stations along the road, as the fireman usually does in switching. Appellee had no control of the engineer in charge of this engine. He had nothing to do with the running of the trains or the running operations of the road. He was engaged in a distinct department, his only duty being to inspect cars.

Lastly, it is insisted that the verdict is excessive. Appellee is thirty-four years of age, and was earning a dollar a day. He has lost one arm, and does not appear to have received other permanent injury. In no case before this court has it ever sustained so large a verdict for such an injury, and we are all of opinion that the verdict is excessive, and that for this reason a new trial should be granted. We see no other error in the record.

Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.

Chief Justice Burnam and Judges O'Rear and Barker dissent, because peremptory instructions were not given.

Petition for rehearing by appellee overruled.