## Trumbo v. Watson Contract Company.

(Decided March 10, 1915.)

### Appeal from Mason Circuit Court.

1. Negligence — Contributory Negligence — Damages. — Contributory negligence is not a complete defense to an action for damages, where the superior servant knew, or by the exercise of ordinary care could have known of the peril, in which the injured servant had placed himself, and failed to exercise ordinary care to avoid injury to him, where the act of the injured one was not the proximate cause of his injury, although he may have, also, been negligent.

2. Master and Servant—Assumption of Risk.—A servant is never presumed to have assumed a hazard, caused by the negligent act or negligent omission to act of the master.

ALLAN D. COLE for appellant.

WORTHINGTON, COCHRAN & BROWNING and M. J. HENNESSEY for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The Watson Contract Company was engaged in construction work in Mason County, Kentucky, and the appellant, Charles P. Trumbo, was employed by it as a laborer. His foreman was one Williamson, and one Turner was the general manager of the company, superior in authority to Williamson. It seems that appellant was one of a number of men employed, and used to do any kind of work for the company, not requiring skill, which was desired, and under the directions of Williamson.

About the 11th day of June, 1912, the foreman, William- son, directed Trumbo and another employe, whose name is Owens, to unload a car loaded with gravel, which was standing upon the railroad track near Trumbo's home. Trumbo and Owens at once, responded to the command, and while endeavoring to unload the car, a lever attached to the car, fell with great force, and struck Trumbo in the face, below the eye, and knocked him into a state of unconsciousness. He was carried at once to a hospital at Maysville, where he lay in an unconscious condition from Tuesday, the day upon which the injury was received, until in the afternoon of the following Saturday. As a result of the injury, it became necessary to remove one of his eye balls, which was done, while in the hospital, and he thus permanently lost his eye. The physician at the hospital testified that in addition to the loss of his eye, he was, also, at the time of his coming to the hospital suffering from a concussion of the brain. He, also, complains that his spine was injured by the fall, he received, when the lever struck him, and he had been unable to perform any manual labor since the time of the injury.

He filed this suit in the Mason Circuit Court, against appellee, alleging that his injuries were the direct and proximate result of the gross negligence of the appellee, through its foreman, Williamson, and Turner, the superintendent. The appellee filed answer, traversing the allegations of negligence in the petition and amended petition, and, also, plead contributory negligence on the part of the appellant, and that the injury resulted from a risk assumed by him under his contract of employment. By agreement of record, all the affirmative allegations of the answer were considered as controverted.

Upon the trial of the case before the court and a jury, after the close of the evidence for the appellant, the appellee, by counsel, moved the court to direct the jury to find a verdict for it, which the court did over the objection of the appellant, and to which ruling of the court the appellant excepted. The appellant filed grounds and moved the court to grant him a new trial, which motion the court overruled, and entered a judgment dismissing appellant's petition, to all of which appellant excepted, and now appeals to this court.

The only question presented to this court, by counsel, is as to whether or not the trial court was in error in

directing the jury to find a verdict for appellee. To determine that question, it becomes necessary to consider the evidence offered by appellant. The evidence conduces to prove, that the car which he was assisting to unload, was a new brand of gravel car; that he had never seen one of the kind before; and that he had no experience in unloading any kind of a car loaded with gravel, although he had seen a few of the ordinary kinds of the cars used for transporting gravel, unloaded; that the cars he had seen were unloaded, by the use of a wrench upon the side of the car. The car in question, had an iron bar, underneath, upon which the car rested, and to this was attached an iron bar, called a lever, which came up near the center of the car, at the end, and was supported by a rachet or dog, which held the lever at an angle of about forty-five degrees from the end of the car, and this was attached to some kind of mechanism, extending underneath the car, and when the lever was released from the rachet, the lever immediately fell, with great force, to a horizontal position, parallel with the end of the car, and this resulted in unloading the car at once. When the lever was released from the rachet or dog, the weight of the gravel immediately caused the lever to fall. It does not appear that either Trumbo or Owens understood anything about the mechanism of the car, and the effect of the mechanism, by which the lever was worked, upon its movements. Williamson or Turner, however, explained to them, that when the lever was disengaged from the rachet, that the lever fell suddenly, and very hard, but it does not appear that Trumbo knew in which direction it would fall, and this was not explained to him. Turner and Williamson were both present, and directed Trumbo and Owens to go in between the cars and get the lever out of the rachet, which they did, according to the directions, which they had received. The appellant then expected the lever to fall, and stood aside to avoid it. On account of some hitch or obstruction in the working of the machinery, the lever did not fall, but remained in its position. Then Trumbo, without any directions to do so from Williamson or Turner, but in their presence, got upon the sill of the car, and taking hold of the lever with his hands, attempted to pull it down, and Owens, also, without directions, but in the presence of Williamson and Turner, got upon the end of the car, and pressed down on the lever with his foot.

Their efforts, however, failed to start the lever down, and it remained in its position, as theretofore. While Trumbo and Owens were thus engaged, Williamson and Turner went around on the side of the car, and out of sight of Trumbo and Owens, and without warning them in any way, as to what they intended to do, and remained there a short space of time, during which Trumbo ceased to pull at the lever, and stood there, with his hands resting upon the lever, and talking with Owens and another man, named Cogan, who was present, and he testified that he did not then know what to do. About this time, Turner came around to where they were, and said: "It will be alright directly." Trumbo says that he heard nothing more from either Turner or Williamson, and the next thing he knew was when he regained consciousness in the hospital in Maysville. Owens testified that Turner or Williamson struck some part of the machinery with a hammer, which had the effect to cause the lever to fall instantly upon the blow being given, and that Trumbo was struck with it and knocked down upon the railroad track. He, also, testifies that about that time, that Turner said, "Be careful," but it does not appear that Trumbo heard this. Trumbo states that while he expected that when the lever fell, that it would fall down to a horizontal position, but he received no information, that it would come down at the place where he was standing. He, also, stated that he was engaged in attempting to pull the lever down, when it fell, and Owens makes the same statement, but Trumbo corrects his testimony, to the extent of saying, that he had ceased to pull upon the lever before it fell.

We do not know upon what particular ground the trial court based its opinion, that the appellant had failed to manifest his right to any relief, but we presume that it was upon the ground, that the proof failed to show any negligence in appellant's superior servants, which was the proximate cause of his injury; or else, that he so contributed by his own negligence to his injury, that but for his own negligence, that he would have suffered no injury; or else, that his injury arose from a risk, which he had himself assumed, when he engaged in the work. In either event, we cannot concur in the opinion of the trial court.

As elementary principles of the law, which govern such cases, it was the duty of the appellant to exercise

ordinary care for his own safety, and it was the duty of appellee's servants, in authority over appellant, to use ordinary care to save him from any injury, while engaged in the service of their master. After the appellant was informed, that when the lever should fall, that it would fall to a horizontal position, very suddenly and forcibly; if the lever had been caused to fall, by the exertions of appellant in pulling upon it, in the direction in which he was standing, or by his exertions combined with the exertions of Owens, pressing down upon it with his foot, in the same direction, it is very apparent that appellee would not be liable to appellant for damages for his injury, because the injuries would have been the result of his own negligence, or that of his fellow-servant, Owens. It appears, however, from the proof offered, that the exertions of appellant and Owens did not result in the fall of the lever, as they had, or were exercising themselves to move it, and their combined exertions were unavailing, and according to the evidence of appellant, he had ceased to pull upon the lever before it fell, and was standing with his left hand resting upon it. It must be presumed that Turner and Williamson had knowledge of the mechanism of the car, and the effect the striking some part of the machinery a heavy blow with a large hammer, would have upon the action of the machinery, and the action of the lever. They actually knew of the dangerous and hazardous situation, in which appellant had placed himself, because the appellant had already gotten upon the sill of the car, and was pulling at the lever, before they went upon the other side of the car, and Turner returned, and either saw the appellant still pulling upon the lever, or saw him standing with his hand upon it, in a situation, where it would strike him when it fell, immediately before the blow of the hammer was given. They knew, or could have known by the exercise of ordinary care, of the peril in which appellant stood, when the lever should fall. They knew, or could have known by the exercise of ordinary care, that appellant was inexperienced in the operation of the mechanism of the car, and by reason of his inexperience did not appreciate the danger to which he was exposing himself. The appellant did not know that the machinery of the car could be set in motion by a blow from a hammer, and he had no knowledge that such a means was intended to be made use of. Turner and Williamson already knew

that the lever could not be caused to fall by the exertions of appellant and Owens, and that the use of the hammer would precipitate the falling. It was the duty of Turner and Williamson to have given appellant distinct warning, that they were going to use the hammer, and cause the lever to fall, so that he would be enabled to avoid the blow. For the sake of argument, concede that appellant was negligent in getting upon the sill of the car, and in standing there, or attempting to pull the lever down, the appellee cannot be excused, when its superior servant saw the peril in which appellant had put himself, and failed to exercise ordinary care to save him from injury. Under the facts in evidence, it can not be said that the proximate cause of appellant's injury arose from his position on the sill of the car, or his proximity to the lever, but the striking with the hammer, which caused it to fall, and the failure of the appellee's servants, in authority over appellant, to give him any warning of their purpose, seems to have been the proximate cause, although appellant may have, also, been negligent, as above stated. The rule is, that the contributory negligence of an injured party cannot avail anything as a defense to his action for damages where the party causing the injury, saw the peril to which the injured party was exposed, and by the exercise of ordinary care could have saved him from injury, although his own negligence was the cause of his exposure to the peril. This principle is founded upon one of the prime laws of humanity. L. & N. R. R. Co. v. Lowe, 118 Ky., 272; L. & N. R. R. Co. v. Collins, 2 Duvall, 114; L. & N. R. R. Co. v. McCoy, 81 Ky., 411; L. & N. R. R. Co. v. Earl's Admr., 94 Ky., 368; Cahill v. Cincinnati, et al. Ry. Co., 92 Ky., 345; L. & N. R. R. Co. v. Shuster, 10 R., 65; Flynn v. Ry. Co., 110 Ky., 662; Thompson on Negligence, Sections 230-232.

It should be borne in mind, that this duty of exercising care to avoid injury to one, when his peril is discovered, embraces even trespassers, to whom no duty is owed, except to avoid injury to them, when their peril is discovered. The appellant was not a trespasser, but was there in the performance of his duties, directly under the eye of the chief servant of his master, who owed to him the duty of exercising ordinary care to avoid injuries to him. The negligence of Turner and Williamson, from the proof, seems to have consisted, in striking the machinery with a hammer, and thus causing the lever

to fall, when they had knowledge of the peril in which appellant had put himself, and was remaining, without giving him any warning of what they intended to do, and as to whether or not they were guilty of negligence, in so doing, should have, under proper instructions, been submitted to the jury.

The court should have, upon such a state of facts, told the jury, that, although the appellant was negligent in exposing himself to the peril, yet, he was entitled to recover, if, after Turner and Williamson had knowledge of his peril, they failed to exercise ordinary care to save him from the injury and his injury resulted from such failure.

Under the proof offered, the doctrine of assumed risk does not seem to have any place in this case. A servant is never presumed to have contracted to assume the hazard of a negligent act or negligent omission to act of the master.

For the reasons above stated, the court was in error in directing a verdict for the appellee, and the judgment below is ordered to be reversed, but upon another trial the court will instruct the jury as to the law of the case, as may appear from the facts, which the evidence tends to establish.